516 P.2d 58

**The STATE of Arizona, Appellee,**

v.

**Henry George RAYMOND, Jr., Appellant.**

**No. 2 CA–CR 335.**

Court of Appeals of Arizona,
Division 2.

Nov. 26, 1973.

Gary K. Nelson, Atty. Gen., Phoenix, by John S. O'Dowd, Asst. Atty. Gen., Tucson, and Frank Leto, Certified Third-Year Law Student under Rule 28(e) for appellee.

Messing, Hirsh & Franklin, P. C. by George J. Feulner, Jr., Tucson, for appellant.

## OPINION

KRUCKER, Judge.

Appellant was convicted of unlawful possession of marijuana and contends on appeal that error was committed in denying his motion to suppress evidence seized from a vehicle and his person.

The following testimony was presented at the motion to suppress. On October 24, 1972, at approximately 7:30 p. m., a Tucson City Police Officer was dispatched to the vicinity of North Fourth Avenue and East Waverly Street, Tucson, to investigate a traffic accident. When he arrived at the scene, he found appellant and a woman standing between the two vehicles involved in the accident. Appellant's vehicle, which was damaged in front, was against the rear of the woman's vehicle, which was damaged in the rear. According to the woman, she was about to make a left turn onto Waverly when appellant's car struck her car in the rear.

The officer gave both drivers exchange information slips which is standard procedure for all accidents. When he gave one to appellant, he noticed that his clothes

smelled very heavily of burning marijuana. The officer stated:

"When I asked him to fill out the exchange information slip he didn't respond very well. His voice, his words were slurred. He talked very little, if any, and then asked me if I would fill it out for him. He stated he could not fill it out."

Another officer arrived on the scene and took over the accident investigation. When he arrived, the first officer went back to appellant's vehicle and looked inside it from the passenger side. He testified:

"Q. When you say you looked in the door, first of all was the window down at this time?

A. Yes, it was.

Q. When you looked in the door, how far did you look in the door?

A. I stuck my head approximately six inches inside the window.

Q. When you did so, did you notice anything at all?

A. Yes, I saw a black leather case underneath the brake pedal on the driver's side.

Q. Prior to your seeing this black leather case, did you notice anything with your senses at that time?

A. Yes, the moment I put my head near the window, I immediately smelled the odor of burning marijuana. It was more heavy inside the vehicle than upon the defendant.

Q. When you say you put your head near the car, was that—in other words, did you smell the marijuana prior to the time you stuck your head inside?

A. Yes, I smelled it before I put my head inside the window. It was emitting from the window.

Q. And at the time you stuck your head approximately six inches in this window, you said you saw a black leather case?

A. Yes.

Q. And what type of case was this?

A. It was a black leather case shaped somewhat like a gun. It's a normal case which is used by several police officers, detectives, in which they carry their weapons in. It was the same type case. I immediately felt there was a weapon inside that case.

Q. And what did you then proceed to do?

A. Both doors of the vehicle were jammed so I climbed through the right side window and picked the leather case up off the floor and brought it outside.

Q. What was the reason for your going in the vehicle and picking up the leather case at that time?

A. I was searching for the marijuana which I believed the subject to have.

Q. Was there any other reason?

A. Well, upon spotting the weapon on the floor and knowing the defendant's condition, if it was a weapon, I was going to place it in the Tucson Police Department property section. He would not be allowed to have it.

\*   \*   \*   \*   \*   \*

Q. Officer, what did you do with this black gun case after you retrieved it from the vehicle?

A. Well, Officer Mock was speaking with the defendant, I took the black case and laid it on the front of the defendant's vehicle. I unzipped it and removed from it a nine calibre—correction, I mean nine millimeter Browning Automat-

ic, a box of shells and a plastic bag filled with the marijuana.

Q. What did you then proceed to do at this time?

A. Placed the articles back in the zippered bag and advised Mr. Raymond that he was under arrest for possession of marijuana, asked him to go to the rear of the car and put his hands on the car. As he was walking back he took something from his left pocket and put it in his right pocket. I told him not to make any more movements, to just put his hands on the back of the car, which he did. I took the articles out of his right pocket which he had transferred from the left. They were two papers, cigarette roller papers, two separate packages, and then in his left pocket I took out three rolled marijuana cigarettes, one of which had been partially smoked or burned and had been snuffed out."

On cross examination the officer testified:

"Q. Was there any specific fact you can point to that would lead you to believe that marijuana was located in the vehicle?

A. Yes.

Q. What was that fact?

A. The smell about his person.

Q. Was there anything other than the smell about his person?

A. Yes.

Q. That would lead you to the belief that marijuana was located in the vehicle?

A. Yes.

Q. What is that?

A. The smell about the car when I walked by it.

Q. Prior to the talking, only prior to the time you walked over by the car?

A. When I first arrived at the scene I came by the passenger side window. That's where I first smelled it and then smelled it upon him.

Q. Is there anything else besides those two instances?

A. And his actions."

The officer also testified on cross-examination that appellant's vehicle was damaged to such an extent that he would not be able to drive it away and it would have to be towed away because it was obstructing traffic. Also, he estimated that on approximately 30 to 50 previous occasions he had smelled the odor of marijuana, that the odor of "burning" or "burned" marijuana were basically the same and that in his opinion the odor of marijuana, after it had been smoked, would linger on from fifteen minutes to an hour.

Appellant contends that the warrantless search of his vehicle was unlawful for two reasons: (1) absence of the requisite exigent circumstances to justify omission of a warrant, and (2) absence of probable cause to search the vehicle.

■■■ Police officers may search a vehicle without a warrant where they have reasonable or probable cause to believe that the automobile contains contraband and there are exigent circumstances to justify a warrantless search. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Appellant protests that there were no exigent circumstances in this case to justify the search without a warrant since the vehicle was immobilized. In other words, he contends that since the car wasn't going anywhere a search warrant should have been obtained. He cites Coolidge v. New Hampshire, supra, for the proposition that a "fleeting opportunity" to search is a prerequisite to a warrantless search. We believe that such prerequisite was present here since appellant's vehicle was obstructing traffic and was soon to be towed away.

Other cases cited to us by appellant dealing with warrantless searches of vehicles, held to be unreasonable for lack of "exigent circumstances", are distinguishable, hence inapposite. *See, e. g.,* Cash v. Williams, 455 F.2d 1227 (6th Cir. 1972); Cook v. Johnson, 459 F.2d 473 (6th Cir. 1972); People v. Railey, 496 P.2d 1047 (Colo. 1972); Commonwealth v. Linde, 448 Pa. 230, 293 A.2d 62 (1973).

We agree with appellant that there must be reasonable or probable cause to believe that a vehicle contains an instrumentality of, or evidence pertaining to, crime before a warrantless search may be conducted. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). Here, the officer testified that a strong odor of marijuana emanated from both appellant's person and his vehicle. Also, appellant's condition indicated to him that he was under the influence of something and he did not believe he was intoxicated as he detected no smell of alcohol on his breath.

The distinctive odor of marijuana emanating from appellant's car furnished sufficient probable cause to effect an arrest. People v. Parisi, 46 Mich.App. 322, 208 N.W.2d 70 (1973); State v. McGuire, 13 Ariz.App. 539, 479 P.2d 187 (1971). Generally speaking, probable cause to arrest and probable cause to search are synonymous. State v. Hodge, 504 P.2d 143 (Or.App.1972). We hold, therefore, that the officer had reasonable cause to believe that the contents of appellant's car offended against the law. We are unimpressed with appellant's argument that since no one else at the accident scene smelled the marijuana the police officer who testified as to the odor was incredible. The trial court apparently believed the officer and concluded that the circumstances of the accident and/or the poorer olfactory senses of the other witnesses accounted for the fact that they did not smell marijuana.

Since the subject search fell within the "automobile exception", the search without a warrant was not unlawful and the trial court correctly denied the motion to suppress.

Affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.