OPINION
ECKERSTROM, Chief Judge:
¶ 1 Following a bench trial, appellant Ronald Siseo II was convicted of child abuse, possession of drug paraphernalia, possession of marijuana for sale, and production of marijuana. The trial court imposed concurrent prison terms, the longest of which are 3.5 years. On appeal, Sisco challenges the denial of his motion to suppress and the sufficiency of the evidence supporting his conviction for child abuse.
¶ 2 We address here the effect of the Arizona Medical Marijuana Act (AMMA), A.R.S. §§ 36-2801 through 36-2819, on determinations of probable cause. That Act renders possession, cultivation, and use of marijuana lawful under some circumstances. Accordingly, those circumstances — not the mere possession itself — now determine whether such activity is criminal or permitted under state law. For this reason, and for the reasons stated below, we hold that the scent of marijuana, standing alone, is insufficient evidence of criminal activity to supply probable cause for a search warrant. We emphasize this holding is a limited one. Probable cause can arise when the scent of marijuana is coupled with additional, commonly evident facts or contextual information suggesting a marijuana-related offense. However, no such information was presented here. We therefore reverse the denial of Sisco’s suppression motion and remand the case to the trial court. Our disposition makes it unnecessary to address the evidence supporting his conviction of child abuse.
Factual and Procedural Background
¶ 3 When a search warrant is challenged based on a lack of probable cause, we consider only the evidence presented to the magistrate at the time the search warrant was issued. See State v. Jung, 19 Ariz.App. 257, 258-59, 506 P.2d 648, 649-50 (1973); see also State v. Crowley, 202 Ariz. 80, ¶ 7, 41 P.3d 618, 621 (App.2002). The initial search warrant affidavit stated that three police officers had smelled, from a street and sidewalk, an “overpowering” or “strong odor of fresh marijuana” coming from one particular warehouse in a four-unit complex: Unit 18. Based on this information, the magistrate concluded there was probable cause of unlawful possession of marijuana and issued a warrant. When the officers entered the building, they found it was vacant and contained no marijuana.
¶ 4 The same police officer who had applied for the first search warrant then applied for a second warrant for a nearby building, Unit 20, which was separated by a wall and locked gate. He avowed that after he and other officers had entered the property of Unit 18 they had been able to “narrow ... down” the source of the odor and exclude other potential sources. The magistrate issued an amended warrant for Unit 20, again based only on information about the scent. Inside that warehouse, officers discovered growing equipment and dozens of marijuana plants. In a separate portion of the building that served as a residence, they also found several items indicating that a young child lived there.
¶ 5 Personal property found in Unit 20 established that Sisco was one of its occupants, and he subsequently was charged with several criminal offenses noted above. He filed a suppression motion challenging the search warrant on numerous grounds, among *233 them that the scent of marijuana failed to establish probable cause of criminal activity. After an evidentiary hearing, the trial court denied the motion, finding the AMMA had no impact on the probable-cause determination in this case. This appeal followed Sisco’s convictions and sentences.
Discussion
¶ 6 As he did below, Sisco challenges the suppression ruling because it was based on case law that has been abrogated by the AMMA. The state maintains the trial court did not abuse its discretion because the odor of marijuana is still sufficient to support a finding of probable cause under all circumstances.
¶ 7 Absent exceptions not applicable here, a search warrant supported by probable cause is required by the Fourth Amendment of the United States Constitution and article II, § 8 of the Arizona Constitution. See State v. Hyde, 186 Ariz. 252, 268, 921 P.2d 655, 671 (1996); State v. Adamson, 136 Ariz. 250, 257, 665 P.2d 972, 979 (1983). Once issued, a search warrant is presumed to be valid, and a defendant challenging it for lack of probable cause carries the burden of going forward below. Hyde, 186 Ariz. at 268, 270, 921 P.2d at 671, 673. A magistrate’s finding of probable cause will be upheld when there is a substantial basis for it. Id. at 272, 921 P.2d at 675; State v. Ballinger, 19 Ariz. App. 32, 34-35, 504 P.2d 955, 957-58 (1973); State v. McMann, 3 Ariz.App. 111, 112-13, 412 P.2d 286, 287-88 (1966). We will not disturb a trial court’s ruling on a motion to suppress unless the court clearly has abused its discretion. State v. Stanley, 167 Ariz. 519, 525, 809 P.2d 944, 950 (1991). However, an error of law made in the process of making a discretionary determination constitutes an abuse of discretion. State v. Simon, 229 Ariz. 60, ¶ 7, 270 P.3d 887, 889 (App.2012); State v. Noceo, 223 Ariz. 222, ¶ 3, 221 P.3d 1036, 1038 (App.2009). And, whether officers presented information legally sufficient to establish probable cause is a question of law that we review de novo. See State v. Blackmore, 186 Ariz. 630, 632, 925 P.2d 1347, 1349 (1996); Frimmel v. Sanders, 236 Ariz. 232, ¶ 25, 338 P.3d 972, 978 (App.2014).
A. Constitutional Analysis
1. Probable Cause
¶ 8 “Probable cause to conduct a search exists when ‘a reasonably prudent person, based upon the facts known by the officer, would be justified in concluding that the items sought are connected with criminal activity and that they would be found at the place to be searched.’ ” State v. Spears, 184 Ariz. 277, 285, 908 P.2d 1062, 1070 (1996), quoting State v. Carter, 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985); accord State v. Prince, 160 Ariz. 268, 272, 772 P.2d 1121, 1125 (1989). This is the test by which we determine whether a “fair probability” of criminal activity exists under the Fourth Amendment standard articulated in Illinois v. Gates, 462 U.S. 213, 238,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). State v. Buccini, 167 Ariz. 550, 556, 810 P.2d 178, 184 (1991). Although probable cause is a fluid, nontechnical concept, id. at 558, 810 P.2d at 186; State v. Emery, 131 Ariz. 493, 505-06, 642 P.2d 838, 850-51 (1982), it is not without limits. Our case law establishes boundaries between circumstances that support a justified belief in criminal activity, on the one hand, and those that provide mere suspicion or reasonable grounds for further investigation, on the other. See State v. Dupuy, 116 Ariz. 151, 155, 568 P.2d 1049, 1053 (1977); see also Buccini, 167 Ariz. at 557, 810 P.2d at 185.
¶ 9 When assessing probable cause, comparison to the reasonable-suspicion standard is instructive. Reasonable suspicion for traffic stops cannot rest solely on “circumstances or factors that do not reliably distinguish between suspect and innocent behaviors ... because they may cast too wide a net and subject all travelers to ‘virtually random seizures.’” State v. Sweeney, 224 Ariz. 107, ¶ 22, 227 P.3d 868, 874 (App.2010), quoting Reid v. Georgia, 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam). The facts must be “specific, distinct, or ‘particular’ to the suspect” so as to “reduce the risk of sweeping in a substantial number of innocent travelers.” State v. Evans, 237 Ariz. 231, ¶¶ 10, 17, 349 P.3d 205, 208, 209 (2015). A description of “entirely *234 ordinary” activity does not give rise to a reasonable, particularized suspicion. Id. ¶ 12. Probable cause is a higher standard than reasonable suspicion. Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000); State v. O’Meara, 198 Ariz. 294, ¶ 10, 9 P.3d 325, 327 (2000). It therefore follows that when a description of circumstances “fits any number of other individuals not engaged in criminal activity,” it fails to establish probable cause. State v. Swanson, 172 Ariz. 579, 586, 838 P.2d 1340, 1347 (App.1992).
¶ 10 Our supreme court has recognized this principle. In Drury v. Burr, the court announced that “[w]here there is more than one inference equally reasonable[,] then probable cause does not exist, but where one inference is more reasonable than another and is on the side of guilt, then probable cause may be said to exist.” 107 Ariz. 124, 125, 483 P.2d 539, 540 (1971).[1] Similarly, in Maricopa County Juvenile Action No. J-84984, the court held that “probable cause requires a reasonably prudent person to find more probably than not the existence of the contested fact.” 138 Ariz. 282, 284, 674 P.2d 836, 838 (1983). On several other occasions, our high court has indicated that probable cause is lacking unless the facts suggest that criminal activity is “more probable than not.” State v. Will, 138 Ariz. 46, 49, 672 P.2d 1316, 1319 (1983); State v. Million, 120 Ariz. 10, 15, 583 P.2d 897, 902 (1978); State v. Sardo, 112 Ariz. 509, 515, 543 P.2d 1138, 1144 (1975).[2]
¶ 11 The common law developed the concept of probable cause “ ‘[l]ong before the law of probabilities was articulated as such.’ ” State v. Espinosar-Gamez, 139 Ariz. 415, 417, 678 P.2d 1379, 1381 (1984), quoting Gates, 462 U.S. at 231, 103 S.Ct. 2317. Yet the “‘reasonable,’” Will, 138 Ariz. at 49, 672 P.2d at 1319, quoting State v. Heberly, 120 Ariz. 541, 544, 587 P.2d 260, 263 (App.1978), “responsible,” State v. Superior Court, 149 Ariz. 269, 275, 718 P.2d 171, 177 (1986), “ ‘prudent,’ ” Spears, 184 Ariz. at 285, 908 P.2d at 1070, quoting Carter, 145 Ariz. at 110, 700 P.2d at 497, and “ ‘eautio[us],’ ” State v. Summerlin, 138 Ariz. 426, 431, 675 P.2d 686, 691 (1983), quoting United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir.1970), person employed in the analysis is necessarily someone who is concerned not only with the potential inferences of criminal activity that might be drawn from certain facts, but also with the need to safeguard personal rights and minimize false-positives. See State v. Gunter, 100 Ariz. 356, 361, 414 P.2d 734, 738 (1966) (recognizing standard’s role in balancing “the individual interest in immunity from police interference and the community’s interest in law enforcement”). Accordingly, our supreme court has emphasized that more intrusive investigative measures such as detentions or searches cannot be used to dispel police suspicions aroused by apparently lawful behavior. See State v. Richcreek, 187 Ariz. 501, 504, 930 P.2d 1304, 1307 (1997) (disapproving prior jurisprudence which had stated that police officers who confront “ ‘strange or unusual activities ... should satisfy [themselves] as to the innocence of the activity by all reasonable, lawful means’ ”), quoting State v. Jarzab, 123 Ariz. 308, 311, 599 P.2d 761, 764 (1979).
¶ 12 Although the probable-cause standard might occasionally disturb the innocent, Gates, 462 U.S. at 243 n. 13, 103 S.Ct. 2317, it is not designed to do so as a matter of course, turning a blind eye to lawful activities and seeing instead only potential crimes. Our state has long recognized that the standard is not met when “slight reflection” *235 would suggest to an ordinarily cautious and prudent person that those suspected of an offense “might have been peaceable and respectable people.” Wiley v. State, 19 Ariz. 346, 354, 170 P. 869, 873 (1918); see, e.g., Ex parte Beaver, 23 Ariz. 24, 26, 201 P. 94, 95 (1921) (finding no probable cause for arrest when noncriminal explanations for facts were reasonable assumptions, and evidence failed to show any crime had been committed).
¶ 13 When mistakes are made, “ ‘the mistakes must be those of reasonable [people], acting on facts leading sensibly to their conclusions of probability.’” State v. Pederson, 102 Ariz. 60, 66, 424 P.2d 810, 816 (1967), quoting Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In other words, the circumstances should be ‘“sufficiently strong in themselves to warrant a cautious [person] in believing the accused guilty.’ ” State v. Dixon, 153 Ariz. 151, 153, 735 P.2d 761, 763 (1987), quoting Monroe v. Pape, 221 P.Supp. 635, 642-43 (N.D.I11. 1963) (emphasis added). For this reason, we must distinguish “[fjaets that would cause the officer to investigate the matter further ... from facts that support a finding of probable cause.” Buccini, 167 Ariz. at 559, 810 P.2d at 187 (Cameron, J., specially concurring).
2. Effect of AMMA
¶ 14 In State v. Baggett, we declined to address whether the AMMA had altered the “‘plain smell’ standard” establishing probable cause for a search based on the scent of marijuana. 232 Ariz. 424, ¶ 16, n. 10, 306 P.3d 81, 84, 85 n. 10 (App.2013). Here, with the issue fully argued below and on appeal, we resolve the question with reference to fundamental and longstanding principles of the law of search and seizure.
¶ 15 For many decades, Arizona law strictly criminalized all possession of marijuana. See 1987 Ariz. Sess. Laws, eh. 307, § 18; 1981 Ariz. Sess. Laws, eh. 264, § 8 (former AR.S. § 13-3405). Our courts therefore repeatedly held that the scent of marijuana provided probable cause to believe a criminal offense had been committed. E.g., State v. Decker, 119 Ariz. 195, 197, 580 P.2d 333, 335 (1978); State v. Harrison, 111 Ariz. 508, 509, 533 P.2d 1143, 1144 (1975); State v. Mahoney, 106 Ariz. 297, 301-02, 475 P.2d 479, 483-84 (1970); State v. Raymond, 21 Ariz.App. 116, 119, 516 P.2d 58, 61 (1973); State v. McGuire, 13 Ariz.App. 539, 541, 479 P.2d 187, 189 (1971). Given the substance’s “distinctive odor,” Raymond, 21 Ariz.App. at 119, 516 P.2d at 61, a person familiar with it would recognize it as such and thereby know that a crime involving marijuana had occurred. McGuire, 13 Ariz.App. at 540-41, 479 P.2d at 188-89. In this way, the scent of marijuana had the same evidentiary impact as an item of contraband falling under the plain-view or plain-feel doctrines: with “its incriminating character ... immediately apparent” to a trained law enforcement officer, perception alone provided probable cause for a search, so long as the officer also was in a lawful position to perceive and access the item. Baggett, 232 Ariz. 424, ¶ 16, 306 P.3d at 85; see State v. Morrow, 128 Ariz. 309, 312, 625 P.2d 898, 901 (1981); State v. Ahumada, 225 Ariz. 544, ¶ 15, 241 P.3d 908 (App. 2010).
¶ 16 With the 2010 passage of the AMMA, this rationale no longer applies. “Medical marijuana use pursuant to AMMA is lawful under Arizona law.” ReedUKaliher v. Hoggatt, 237 Ariz. 119, ¶ 17, 347 P.3d 136, 140 (2015). The possession of marijuana is not illegal per se, State ex rel. Montgomery v. Harris, 234 Ariz. 343, ¶ 16, 322 P.3d 160, 162 (2014), and therefore its scent alone does not disclose whether a crime has occurred. Medical marijuana dispensaries may now grow an unspecified number of marijuana plants in an off-site facility. See §§ 36-2804(B)(l)(b)(ii), 36-2806(E). A designated caregiver may cultivate up to twelve plants for each patient and may serve up to five patients, for a total of sixty plants. § 36-2801(l)(b)(ii), (5)(d). A qualifying patient likewise is authorized to possess 2.5 ounces of marijuana and might also be allowed to grow up to twelve marijuana plants. §§ 36-2801(l)(a), 36-2804.02(A)(3)(f). Indeed, thousands of Arizonans have acquired the authorization to possess marijuana in one or more of these ways. See Arizona Department of Health Services, Arizona Medical Marijuana Act (AMMA) End of Year Report (2014) (noting 63,417 active cardholders, with nearly *236 2,000 patients and designated caregivers authorized to cultivate).[3]
¶ 17 Despite these developments, the state maintains the odor of marijuana still supplies probable cause to suspect that an offense has been committed under § 13-3405, both as a general matter of law and under the facts of this particular case.[4] We disagree on both points.
a. General Effect
¶ 18 When a law enforcement officer is aware of certain items in a place to be searched but is unsure about their legal status, “the critical question is whether such items [are] connected with ... criminal activity.” Buccini, 167 Ariz. at 556, 810 P.2d at 184. Unless the items are “ ‘inherently criminal,’” the absence of any additional facts suggesting a criminal connection renders the discovery of those items insufficient to support a finding of probable cause. Id. at 557, 810 P.2d at 185.
¶ 19 The purpose of the AMMA is to “make a distinction between the medical and nonmedieal uses of marijuana.” Initiative Measure, Prop. 203, § 2(G) (2010). In passing the Act, Arizona voters intended to grant marijuana a status comparable to that of prescription drags: legal when possessed for medical purposes, in accordance with therapeutic directives and the law, and otherwise prohibited. As our supreme court has recently observed, “voters established as public policy that qualified patients cannot be penalized or denied any privilege as a consequence of their AMMA-compliant marijuana possession or use.” State ex rel. Polk v. Hancock, 237 Ariz. 125, ¶ 9, 347 P.3d 142, 146 (2015).
¶ 20 Under our current statutory regime, the odor of marijuana does indicate the presence of a substance that might be possessed illegally. However, a reasonable, prudent, and cautious person could not, in the absence of further information, form a well-founded belief that a criminal offense was committed. Just as the possession of a prescription drug does not provide probable cause to suspect a drug offense under AR.S. § 13-3406(A)(1), the mere scent of marijuana does not provide probable cause to suspect a crime under § 13-3405. A contrary conclusion would erase the distinction between lawful and unlawful marijuana at the heart of the AMMA, and it would authorize dragnet police practices that would capture “any number of ... individuals not engaged in criminal activity.” Swanson, 172 Ariz. at 586, 838 P.2d at 1347.[5]
¶ 21 The state nevertheless insists that scent alone suggests criminal activity because the odds remain “overwhelming” that marijuana is possessed illegally. But the state presented no evidence either to the magistrate or the trial court supporting this intuition in the era of the AMMA. In the absence of such data, and given that hundreds of Arizonans and scores of dispensaries *237 now have permission to lawfully cultivate or store marijuana, the magistrate had no basis to assume that most warehouses currently containing marijuana in Arizona do so illegally. The state supports its intuition about the likelihood of marijuana being possessed illegally by dividing the number of AMMA cardholders by the entire population of Arizona. But not all residents of Arizona are users of marijuana. The correct comparison would be between the number of people who use marijuana illegally and the number of people who use marijuana pursuant to the AMMA. The state provided no information below that would shed light on that more relevant proportion.
¶22 Assuming arguendo that the state could compile data demonstrating that marijuana still is most often possessed illegally, this would not necessarily resolve the probable-cause question we face here. Although Gates requires a “fair probability that contraband or evidence of a crime will be found in a particular place,” this standard simply “reaffirm[s] the totality-of-the-eireumstances analysis that traditionally has informed probable cause determinations.” 462 U.S. at 238, 103 S.Ct. 2317. Among those circumstances that must be considered in Arizona are: (1) that marijuana is not necessarily contraband, and (2) those who possess it consistent with the AMMA are granted broad statutory protections against the loss of “any right or privilege” for permissible activity. § 36-2811(B).[6] As Gates emphasized, the relevant inquiry in a probable-cause analysis is “the degree of suspicion that attaches” to a particular type of activity. 462 U.S. at 243 n. 13,103 S.Ct. 2317.
¶ 23 In Arizona, the degree of suspicion that now attaches to the possession of a potentially legal plant, much like the possession of a potentially legal pill, is comparatively modest in the absence of any information about the status of the person or entity possessing it. That conclusion is not altered by the fact that marijuana has hitherto been illegal under all circumstances and that law enforcement officers may therefore have understandably developed practices in accord with that now-outdated assumption. As our own supreme court made clear in Richcreek, law enforcement officers are not entitled to search everyone they deem suspicious in order to confirm the lawfulness of that person’s conduct. 187 Ariz. at 504, 930 P.2d at 1307. Rather, officers must be able to make some particularized showing that distinguishes a mere possibility that a person may have committed a crime from a “fair probability” that the search will provide evidence of criminal activity. Gates, 462 U.S. at 238, 103 S.Ct. 2317.
¶ 24 “ ‘[T]he ultimate touchstone of the Fourth Amendment is “reasonableness.” ’ ” Kentucky v. King, 563 U.S. 452, 459, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011), quoting Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). Reasonableness depends on balancing the public interest, or the legitimate needs of law enforcement, and the individual’s right to privacy and freedom from official interference. See United States v. Knights, 534 U.S. 112, 118-19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); Jarzab, 123 Ariz. at 311, 599 P.2d at 764.
¶ 25 Demanding some circumstantial evidence of criminal activity beyond the mere scent of marijuana strikes that reasonable balance. It preserves all individuals’ rights to privacy under article II, § 8 of our state constitution; it protects the rights of those who choose to use medical marijuana in accord with the AMMA, as specifically required by the provisions of that statutory scheme; it protects the medical privacy, generally, of AMMA cardholders; and it also preserves the privacy rights of those whose property might be located nearby or occasionally host those who use medical marijuana, see § 36-2811(D)(2).
¶ 26 At the same time, requiring such additional evidence of criminality does little to impair the important competing interest of law enforcement in interdicting criminal activity. Our state officers are trained to iden *238 tify and skillfully investigate circumstances that would readily support a reasonable belief that mai’ijuana is not likely to be lawfully possessed. See Gates, 462 U.S. at 243 n. 13, 103 S.Ct. 2317; State v. Hutton, 110 Ariz. 339, 341, 519 P.2d 38, 40 (1974). For instance, even with the AMMA’s passage, the odor of burnt marijuana in public or in an automobile still suggests a crime has occurred. See § 36-2802(0(2), (D). And police can easily develop facts about places where marijuana is being grown or stored that suggest the activity there is criminal, whether from their own observations, consensual encounters, or information supplied by informants. E.g., State v. Castilleja, 345 Or. 255, 192 P.3d 1283, 1292 (2008). In short, an odor-plus standard for probable cause is a manageable way to distinguish probable criminal behavior from noneriminal activity, and making this distinction is necessary to uphold the integrity of our constitutional and statutory rights.
¶ 27 By contrast, were probable cause established by odor alone, then law enforcement officers could invade properties haphazardly, without collecting — and even disregarding — facts bearing on whether possession of the marijuana in question is permitted. See, e.g., People v. Fisher, 96 Cal.App.4th 1147, 117 Cal.Rptr.2d 838, 839, 841 (2002) (holding search warrant authorized search of residence, even though officers had seen permissible amount of marijuana and resident produced medical marijuana certificate before search was executed). Indeed, the record before us confirms at least one instance where police entered a building only to find the activity there was lawful under the AMMA. “[I]t has happened,” as an officer admitted. A sergeant with the Tucson Police Department further acknowledged that, although it is incumbent on officers to collect some additional facts bearing on whether marijuana-related activity is allowed by the AMMA, the department’s “protocol” is to make those determinations “post facto,” after obtaining and executing a search warrant.
¶28 Were we to adopt the state’s suggestion that scent alone furnishes probable cause of a crime, medical marijuana patients would become second-class citizens, losing their rights to privacy and security, including privacy within their own homes.[7] Any patient with a detectable amount of marijuana would be subject to a search. We therefore hold that the odor of marijuana, whether burnt or unburnt, is insufficient by itself to establish probable cause of a crime under Arizona law or a substantial basis for a search warrant sought for a violation of such.
¶ 29 This holding accords with well-reasoned jurisprudence from several other jurisdictions. See, e.g., State v. Crocker, 97 P.3d 93, 96 (Alaska Ct.App.2004) (“[T]he search warrant application can not rely solely on the fact that someone is in possession of marijuana ... [but] must provide an affirmative reason to conclude that the possession is illegal____”); Commonwealth v. Canning, 471 Mass. 341, 28 N.E.3d 1156, 1165 (2015) (“[A] search warrant affidavit setting out facts that simply establish probable cause to believe the owner is growing marijuana on the property in question, without more, is insufficient to establish probable cause to believe that the suspected cultivation is a crime.”); Castilleja, 192 P.3d at 1291 (“[I]s-sue ... is not whether there was probable cause to believe that any marijuana would be found in defendant’s house but, rather, whether ... an unlawful amount of marijuana ... would be found there.”).
¶ 30 In the context of warrant practice, a substantial basis for a warrant is lacking when “the magistrate’s procedures in determining whether there was probable cause d[o] not adequately safeguard the defendant’s constitutional rights.” Hyde, 186 Ariz. at 269, 921 P.2d at 672. When a magistrate makes no effort to discriminate between lawful and unlawful marijuana possession, as occurred here, an individual’s *239 constitutional rights to privacy are not adequately safeguarded. See Canning, 28 N.E.3d at 1166 n. 16 (affirming suppression when “the affidavit reads as though the [medical marijuana] act did not exist”). Accordingly, although Sisco himself does not fall within the AMMA, the exclusionary rule nonetheless operates in his favor to preserve the constitutional rights of all law-abiding people. “Evidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease.” Stone v. Powell, 428 U.S. 465, 492, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).
b. Case-Specific Facts
¶ 31 The state and our dissenting colleague further contend that the probable-cause determination here did not rest exclusively on the scent of marijuana. The state points out that the search warrant affidavit described a large marijuana-growing operation in a commercial or industrial warehouse, and the illegality of the activity therefore could have been inferred from these contextual facts. The affidavit, however, posited marijuana growing in a warehouse that is indistinguishable from the type of “enclosed, locked facility” that could serve as a cultivation site for a medical marijuana dispensary. § 36-2806(E). Thus, the contextual information here, like the information about marijuana odors, did not make it more probable than not that a state crime had occurred, see Maricopa Cnty. No. J-8U98k, 138 Ariz. at 284, 674 P.2d at 838, nor did it shed any light on whether the possession of the substance was illegal.[8]
¶ 32 Although neither party discusses this point specifically in their briefs, dispensary cultivation sites are discreet locations due to the heightened risk of robbery they face. The AMMA authorizes the department of health services to enact rules governing marijuana dispensaries. § 36-2803(A)(4). By law, those rules must “protect[ ] against diversion and theft without imposing an undue burden” on the dispensaries and must specify “[m]inimum security requirements” for dispensaries in order to protect each location. § 36-2803(A)(4)(d). According to the rules, each dispensary and cultivation site is required to install an alarm system, video surveillance and recording system, and panic button. Ariz. Admin. Code R9-17-318(G)(1). Access to a dispensary cultivation site is limited to the dispensary’s principal officers, board members, and authorized dispensary agents. Ariz. Admin. Code R9-17-318(A). Dispensaries are required to adopt policies and procedures to prevent unauthorized access to their cultivation sites. Ariz. Admin. Code R9-17-318(G)(2)(a). And when a dispensary agent transports marijuana, he or she must “[u]se a vehicle without any medical marijuana identification.” Ariz. Admin. Code R9-17-318(D)(2). Cultivation sites, therefore, are not necessarily places that announce their presence as such.
¶ 33 The AMMA does not require dispensaries to post visible notices or otherwise alert law enforcement officers to their presence in order to receive the protections afforded by the Act. To the contrary, the AMMA preserves the confidentiality of dispensary locations and related cultivation sites. §§ 36 — 2804(B)(1)(b)(ii), 36-2810(A)(2). Section 36-2811(E), in turn, forbids searches of dispensaries and cultivation sites except by the department of health services. It therefore follows that a police officer’s discovery of an enclosed, locked facility in which marijuana is growing — which is all the record establishes here — cannot provide probable cause for a search, as this describes any lawful dispensary cultivation site that is protected from searches by the express terms of the AMMA.
¶ 34 Notwithstanding these confidentiality provisions, law enforcement officers may easily note factors that suggest a cultivation site or stash house is illegal and does not fall within the AMMA. For example, a site might be accessed by unauthorized individuals, see Ariz. Admin.' Code R9-17-318(A), it might have deficient exterior lighting, see Ariz. Ad *240 min. Code R9-17-318(G)(l)(b), or it may be located too close to a school, § 36-2804(B)(l)(b)(ii), or in an area prohibited by local zoning. See § 36-2806.01. Although the dissent suggests in hindsight that such circumstances may have existed had the officers conducted further investigation,[9] no such factors suggesting any criminal operation were contemporaneously presented to the magistrate in the search warrant affidavit. See State v. Greenleaf, 11 Ariz.App. 273, 274, 464 P.2d 344, 345 (1970); see also Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (search warrants are based on “objective predetermination of probable cause” instead of “far less reliable procedure o[f] an after-the-event justification for the ... search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment”).
¶ 35 The state emphasizes that the scent in this case was described as a “strong odor of fresh marijuana” in the affidavit, which might indicate the presence of an unlawful amount. But the AMMA authorizes marijuana dispensaries to cultivate large amounts of marijuana in off-site facilities. Moreover, the record here underscores the fallibility of such sensory impressions. Police officers initially were mistaken about the location of the marijuana based on its odor, and they consequently deployed a SWAT team to the wrong building. Nothing in the record suggests that the officers had any more expertise in estimating the amount of marijuana than its location. Thus, to the extent that the nature and strength of the aroma of unburnt marijuana could provide additional circumstantial evidence of unlawful possession beyond the mere presence of the recognizable scent, the state presented no such evidence on the record before us.
¶ 36 As one appellate court has observed, “[although the odor of unburnt, rather than burnt, marijuana could be more consistent with the presence of larger quantities, it does not follow that such an odor reliably predicts the presence of a criminal amount of the substance, ... as would be necessary to constitute probable cause.” Commonwealth v. Overmyer, 469 Mass. 16, 11 N.E.3d 1054, 1058 (2014) (citations omitted). Probable cause is determined by an objective standard that should allow a judicial officer to gauge the reliability of the information reported and the inferences drawn from it. See id. at 1059; see also Beck, 379 U.S. at 96, 85 S.Ct. 223 (“[Safeguards [are] provided by an objective predetermination of probable cause____”); Emery, 131 Ariz. at 506, 642 P.2d at 851 (requiring that “information [be] sufficient to substantiate an independent finding of probable cause”). Accordingly, absent evidence of some specialized and effective training that would allow an officer “reliably to discern, by odor, not only the presence and identity of a controlled substance, but also its weight” or amount, subjective characterizations of the strength of an odor do not furnish probable cause. Overmyer, 11 N.E.3d at 1059. And assuming arguendo that a stronger aroma of raw marijuana could reliably indicate a larger amount, the AMMA authorizes both the storage depots and growing operations that could lawfully contain comparatively large amounts of marijuana.
¶ 37 The dissent notes that the vast majority of AMMA cardholders now live within twenty-five miles of a medical marijuana dis *241 pensary, and the dissent concludes from this fact that the probability of an individual operating a lawful urban marijuana cultivation site is “almost nonexistent.” Yet this conclusion is speculative and rests on a faulty implicit premise. It is true that a qualifying patient or designated caregiver becomes authorized to cultivate marijuana based on the proximity of the qualifying patient’s home to a medical marijuana dispensary. See § 36-2804.02(A)(3)(f). However, the AMMA places no geographic restrictions on where an individual with authorization may cultivate marijuana. Cultivation could occur in a nonresidential area and within twenty-five miles of a dispensary site. As long as the cultivation occurs in an “enclosed, locked facility,” § 36-2801(l)(a)(ii), (b)(ii), it is potentially lawful under the AMMA
B. Statutory Analysis
¶38 A statutory analysis of the AMMA further supports our conclusion that the mere scent of marijuana does not supply probable cause or a substantial basis for a search. We are not persuaded by the state’s arguments to the contrary, and we reject the trial court’s construction of these laws.
1. AMMA Provisions
¶ 39 We interpret voter-enacted laws such as the AMMA de novo and strive to give effect to the voters’ intent. Ariz. Citizens Clean Elec. Comm’n v. Brain, 234 Ariz. 322, ¶ 11, 322 P.3d 139, 141-42 (2014). We look first to the language of the AMMA as the best indicator of that intent. Dobson v. McClennen, 236 Ariz. 203, ¶ 10, 337 P.3d 568, 572 (2014). If its terms are clear and susceptible to only one reasonable interpretation, we must apply the law as written without resorting to other methods of construction. Id.; State v. Fields, 232 Ariz. 265, ¶ 12, 304 P.3d 1088, 1092 (App.2013). If the law is ambiguous, “[w]e consider secondary principles of statutory interpretation, such as ‘the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose.’ ” Brain, 234 Ariz. 322, ¶ 11, 322 P.3d at 142, quoting Wyatt v. Wehmueller, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991).
¶ 40 The plain language of the immunity provisions within the AMMA resolves the question of whether the odor of marijuana gives probable cause to suspect someone of a crime. Section 36-2811(B)(l) provides that “[a] registered qualifying patient or registered designated caregiver is not subject to arrest, prosecution or penalty in any manner, or denial of any right or privilege” for the use and possession of an allowable amount of marijuana under the AMMA. (Emphasis added.) The Act also states more broadly in § 36-2811(D)(2) that “[n]o person may be subject to arrest, prosecution or penalty in any manner, or denied any right or privilege ... for ... [b]eing in the presence or vicinity of the medical use of marijuana authorized under this chapter.” (Emphasis added.)
¶ 41 The right to not be disturbed in one’s private affairs under article II, § 8 is a substantial constitutional right that would be denied to AMMA patients, as well as numerous other citizens sharing homes with them, if simply being in the presence or vicinity of medical marijuana odors gave police probable cause to suspect an offense, invade homes, and make searches, seizures, or arrests. By their terms, these subsections of § 36-2811 uphold privacy rights and alter our prior search-and-seizure jurisprudence concerning marijuana.
¶ 42 Apparently overlooking the express provisions of subsection (D), the trial court focused exclusively on the “arrest, prosecution or penalty” clause in § 36-2811(B) to uphold the search here. That reading would require us to conclude that patients and caregivers are necessarily subject to seizure and search for their possession of marijuana under the AMMA, notwithstanding the lawfulness of their actions. Such a conclusion cannot coexist with statutory language that expressly immunizes lawful users of medical marijuana from arrest or the denial of any privilege enjoyed by any other citizen. § 36-2811(B), (D). This broad language creates a “sweeping grant of immunity” subject only to narrow exceptions that do not apply here. Reed-Kaliher, 237 Ariz. 119, ¶ 8, 347 *242 P.3d at 139.[10]
¶ 43 That odor alone does not provide probable cause is evident from other provisions of the AMMA as well. The purpose of the Act is to “make a distinction between the medical and nonmedical uses of marijuana.” Initiative Measure, Prop. 203, § 2(G) (2010). The Act specifies that “[m]ere possession of, or application for, a registry identification card may not constitute probable cause or reasonable suspicion, nor may it be used to support the search of the person or property of the person possessing or applying for the registry identification card.” § 36-2811(H). The law generally ensures the confidentiality of cardholders’ information, see § 36-2810, and criminalizes any unauthorized disclosure thereof. § 36 — 2816(D); see also § 36-2803(A)(4). The AMMA also anticipates that law enforcement officers will avail themselves of the web-based cardholder verification system to confirm whether individuals possess valid registry identification cards. See §§ 36-2801(16), 36-2807(A, B). And even that system preserves the confidentiality of cardholders’ addresses. § 36-2807(C)(l).
¶ 44 Together, these provisions illustrate that voters intended for the law in Arizona to recognize and maintain a distinction between medical and nonmedical marijuana; they intended to preserve and protect the confidentiality and privacy rights of those authorized to use medical marijuana, much like patients using any other therapeutic drug; and the voters would not view it as reasonable for law enforcement officers or magistrates to regard everyone possessing marijuana as a criminal. See Richcreek, 187 Ariz. at 504, 930 P.2d at 1307 (emphasizing police officers may not use any available means to satisfy themselves about innocence of unusual activity).
¶ 45 Just as voters did not intend to allow searches based on the possession of registry identification cards alone, they did not wish to allow searches based on the possession or use of marijuana authorized by such cards, unless “probable cause exists on other grounds.” § 36-2811(H). Indeed, it would be absurd to suggest that AMMA voters would welcome SWAT teams or other officers into the dwellings of people suffering from debilitating medical conditions such as cancer or Alzheimer’s disease simply to investigate whether the use of marijuana there was medicinal. See § 36-2801(3); Harris, 234 Ariz. 343, ¶¶ 13-14, 322 P.3d at 162 (courts consider policy béhind statute and evil it was designed to remedy, and seek to avoid absurd results).
¶ 46 The state and trial court also misconstrue certain provisions in § 36-2811 that are aimed at protecting the privacy rights of some as instead abrogating the rights of others. Subsections (E) and (F) of the statute expressly include immunities from searches among the protections given to medical marijuana dispensaries and dispensary agents engaged in lawful activity under the AMMA[11] The trial court concluded that *243 the absence of this express protection in other parts of the statute means that only these commercial actors, rather than individual patients or caregivers, receive such protection. But this analysis overlooks the broad protections against infringement of “any right” enjoyed by an individual in subsections (B) and (D). See Reedr-Kaliher, 237 Ariz. 119, ¶ 8, 347 P.3d at 139. And we think it implausible that voters would grant more privacy to businesses than residences, especially when homes receive heightened protection under our state constitution. See State v. Bolt, 142 Ariz. 260, 264-65, 689 P.2d 519, 523-24 (1984).
¶ 47 Instead, the voters included specific protections against searches or inspections of medical marijuana dispensaries because the AMMA in fact authorizes an administrative inspection regime for dispensaries. See § 36-2806(H). Voters intended this administrative inspection program, which is carried out by the department of health services rather than a law enforcement agency, see § 36-2801(4), to ensure adequate compliance with the AMMA, absent any evidence of lawbreaking, see § 36-2810(E), and to supplant the provision in our general warrant statute that would otherwise allow searches and inspections “in the interest of the public health, safety or welfare.” A.R.S. § 13-3912(5). Section 36-2811(F), in ton, clarifies that dispensary agents retain their rights to be free from personal searches or seizures in their workplaces, notwithstanding the aforementioned dispensary-inspection program, and despite their forfeiture of other privacy rights in the course of becoming agents, such as undergoing criminal background checks, § 36-2804.01(E), and fingerprinting, § 36-2819. In sum, the enumeration in § 36-2811(E) and (F) is an extra precaution to protect members of the commercial class from searches and uphold their privacy rights; it was not intended to diminish an individual’s right of privacy by implication.
2. Statutory Defense
¶ 48 The state further contends that the lawful possession of marijuana is a statutory defense to be shown by a patient or caregiver who is accused or suspected of a crime; it is not a factor relevant to a probable-cause determination. Athough similar arguments have been accepted in other states with various medical marijuana laws, see, e.g., People v. Clark, 230 Cal.App.4th 490, 178 Cal.Rptr.3d 649, 656 (2014); People v. Brown, 297 Mich.App. 670, 825 N.W.2d 91, 94-95 (2012) (per curiam); State v. Senna, 194 Vt. 283, 79 A.3d 45, ¶¶ 10-16 (2013); State v. Fry, 168 Wash.2d 1, 228 P.3d 1, ¶ 22 (2010), we find fault with this view in two significant respects.
¶ 49 First, it misunderstands the nature of the right at issue. The requirement of a search warrant exists to protect a person’s privacy interests, Hyde, 186 Ariz. at 268, 921 P.2d at 671, and those interests receive no protection once someone’s privacy has been invaded. A subsequent legal defense to a criminal conviction provides no relief from an invasion of the privacy that the Fourth Amendment protects. For that reason, as we explained above, the likelihood that a person is not guilty of any offense necessarily has a place in a probable-cause determination. See Crocker, 97 P.3d at 96. An ex parte warrant hearing affords no opportunity to assert a defense, prevent a search, and preserve one’s constitutional right to privacy. See A.R.S. §§ 13-3914, 13-3915; Frimmel, 236 Ariz. 232, ¶ 26, 338 P.3d at 979. Accordingly, “[t]he law requires the judgment of a judicial officer,” before trial or the appointment of counsel, to determine “when the right to privacy must yield to the right of search.” Hutton, 110 Ariz. at 341-42, 519 P.2d at 40-41.
¶ 50 Second, the statutory-defense argument simply proves too much. Marijuana possession is broadly criminalized, except as authorized under the AMMA, § 36-2802(E), but so too is the possession of prescription- *244 only drugs. See A.R.S. §§ 13 — 3406(A)(1), 13-3412(B). We have long recognized that having a prescription is a defense to a drug-possession charge, see State v. Armstrong, 176 Ariz. 470, 475, 862 P.2d 230, 235 (App. 1993), with “[t]he burden of proving one is within a protected category” placed on the defendant. State v. Cramer, 174 Ariz. 522, 524, 851 P.2d 147, 149 (App.1992).[12] Does it therefore follow that everyone taking a prescription medication is a suspected criminal who is subject to a home search and arrest? The answer is obviously no, because the bare fact of possessing a prescription drug does not cause a reasonable person to suspect a criminal offense. Questions naturally arise about the actor’s status and the circumstances of the possession or use — in a word, about context — before any prudent person would form a belief about the activity being criminal. The mere fact that a prescription drug is possessed, like the fact that marijuana is possessed, is not a sufficiently strong circumstance in itself to allow a cautious person to believe someone guilty. See Dixon, 153 Ariz. at 153, 735 P.2d at 763.
¶ 51 Although these general points render the aforementioned cases unpersuasive, specific provisions within the AMMA provide an additional reason for not applying this case law to Arizona. Notably, the AMMA contained an interim provision, A.R.S. § 36-2812, that created an “[a]ffirmative defense” for marijuana charges. Initiative Measure, Prop. 203, §§ 3, 5 (2010). That provision expired when the department of health services began issuing registry identification cards on April 14, 2011. The fact that the AMMA created an interim affirmative defense, using that precise language, strongly indicates that the permanent protections in § 36-2811, which are not designated as “defenses,” are not to be treated as defenses for all purposes, and especially not for determining probable cause for search warrants. Rather, the AMMA “provides immunity for charges of violating § 13-3405, which would otherwise subject a person to criminal prosecution for marijuana use.” Reed-Kaliher, 237 Ariz. 119, ¶ 16, 347 P.3d at 140.
¶ 52 To broadly suggest that the lawfulness of marijuana possession is a mere defense to be asserted after arrest is the antithesis of reasonableness. Unfortunately, some states have accepted this view. The state of Washington, for example, which often supplies persuasive authority given our identical constitutional provisions on privacy, see Clouse ex rel. Clouse v. State, 199 Ariz. 196, ¶ 17, 16 P.3d 757, 761 (2001); Bolt, 142 Ariz. at 265 n. 5, 689 P.2d at 524 n. 5, has held that police officers retain discretion to arrest medical marijuana users despite proof of their compliance with medical marijuana laws. Fry, 228 P.3d 1, ¶¶ 17, 21-22. In our view, such unchecked police discretion undermines the rule of law and due process, with “ ‘the risk of arbitrary and abusive practices exceeding] all tolerable limits.’” State v. Mullen, 171 Ariz. 38, 39, 827 P.2d 1133, 1134 (App.1992) (Gerber, J., specially concurring), quoting Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Under Washington precedent, marijuana users can be subjected to repeated arrests and trials for perfectly lawful use of marijuana. Fry, 228 P.3d 1, ¶ 22. This should be recognized as the absurdity it is. Id. ¶ 50 (Sanders, J., dissenting). And this practice is supported, among other questionable propositions, by the false premise that police could not lawfully enforce criminal marijuana laws if the rule were otherwise, see id. ¶ 20 — that “disorder and confusion” would be the alternative. Clark, 178 Cal.Rptr.3d at 657.
¶ 53 The effect of the AMMA on law enforcement practice is not nearly so dramatic. We emphasize that our holding today is limited and that Arizona law enforcement officers *245 retain the ability to investigate suspected marijuana crimes based on the odor of marijuana. We further emphasize that officers are not required to disprove the possibility of legal use. They simply need to provide additional contextual information that suggests the possession of marijuana is unlawful, rather than permitted by the AMMA, to establish probable cause that will authorize searches and arrests. As we indicated above, such facts may be readily obtained by traditional, effective investigatory techniques. But the privacy protections guaranteed by article II, § 8 of our state constitution, as well as the Fourth Amendment to the United States Constitution, require officials to make some effort to differentiate lawful from criminal activity. Those constitutional protections do not tolerate the guess-and-eheck system on display here.[13] In sum, now that marijuana may be possessed legally under Arizona law, facts demonstrating nothing more than such possession cannot, standing alone, be probable cause to believe a crime has been committed.
C. Dissent
¶54 Finally, the dissent maintains that we need not address the probable-cause question at all because we can hold here that the officers relied in good faith on the validity of the warrant. But, although the state plausibly argued below that the officers’ reliance on the warrant was reasonable and that the good-faith exception should therefore apply, the state neither secured a ruling from the trial court on that question nor raised this argument in its answering brief. The state has therefore abandoned that argument on appeal. See State v. Hendrix, 165 Ariz. 580, 582, 799 P.2d 1354, 1356 (App.1990); see also State v. Brita, 158 Ariz. 121, 124, 761 P.2d 1025,1028 (1988).
¶ 55 Although our dissenting colleague is correct that we may uphold a trial court’s ruling on any ground, we do not customarily do so on grounds neither raised nor briefed on appeal. Cf. State v. Canez, 202 Ariz. 133, ¶ 51, 42 P.3d 564, 582 (2002) (addressing issues identified in state’s brief); State v. Boteo-Flores, 230 Ariz. 551, ¶¶ 6-9, 288 P.3d 111, 113-14 (App.2012) (reaching good-faith question when argument squarely raised on appeal). Moreover, it is the state’s burden to establish the applicability of the good-faith exception. Crowley, 202 Ariz. 80, ¶ 32, 41 P.3d at 629; see Hyde, 186 Ariz. at 266, 921 P.2d at 669 (emphasizing state carries burden of persuasion under Rule 16.2(b), Ariz. R.Crim. P., when defendant makes prima facie case for suppression). That inquiry can include factual questions and assessments of the credibility of witnesses. Our court is ill-equipped to address such mixed questions of law and fact when no determinations of fact have been rendered at the trial court level.
¶ 56 As appellate judges, we have a duty to be fair and impartial in rendering our decisions. See Rule 2.2, Ariz.Code of Jud. Conduct, Ariz. R. Sup. Ct. 81. If the state intended to argue for the good-faith exception on appeal, it was the state’s duty to raise the issue in its answering brief and thereby provide Sisco the opportunity to respond in his reply brief through our normal appellate procedures. The state’s abandonment of the issue may be fairly interpreted as a tactical decision aimed at generating a ruling on the state’s argument that the plain-smell doctrine has not been affected by the AMMA. If our court were to now deviate from our normal appellate procedures and either give the state another opportunity to discharge its burden or relieve the state of its burden entirely by deciding the issue of good faith sua sponte, we would risk appearing asymmetrical in our treatment of the parties. As illustrated by State v. Moreno-Medrano, 218 Ariz. 349, ¶¶ 16-17, 185 P.3d 135, 140 (App. 2008), our court holds criminal defendants strictly responsible for discharging their appellate burdens, and it is only fitting that we hold the state to the same standard.
*246 Disposition
¶ 57 Because the search warrant in this case was issued without probable cause of criminal activity or a substantial basis to conclude that probable cause existed, the trial coui’t erred in denying Sisco’s motion to suppress the evidence resulting from the search. We reverse the trial court’s ruling, vacate the convictions and sentences, and remand for further proceedings consistent with this decision.

. Although Drury involved a preliminary hearing testing whether there was probable cause for an arrest, "[generally probable cause to arrest and probable cause to search are synonymous.” State v. Sardo, 112 Ariz. 509, 515, 543 P.2d 1138, 1144 (1975), citing State v. Raymond, 21 Ariz.App. 116, 119, 516 P.2d 58, 61 (1973).

. We recognize that this is not the exclusive formulation for the definition of probable cause. See State v. Wolfe, 137 Ariz. 133, 134, 669 P.2d 111, 112 (App.1983) (noting multiplicity of formulations); see also Florida v. Hams, - U.S. -,-, 133 S.Ct. 1050, 1055, 185 L.Ed.2d 61 (2013) (emphasizing probable cause cannot be reduced to precise formulation such as preponderance of evidence); Ornelas v. United States, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("Articulating precisely what 'reasonable suspicion’ and 'probable cause' mean is not possible.”). But all such formulations attempt to distinguish lawful and unlawful activity.

. The department is required to furnish this annual report to the legislature pursuant to § 36-2809.

. Possession of marijuana remains unlawful under federal law. 21 U.S.C. §§812 sched. I(c)(10), 844(a). Herein, we address only the effect of the AMMA on investigations of crimes under Arizona law by state officials. Cf. Commonwealth v. Craan, 469 Mass. 24, 13 N.E.3d 569, 577 (2014) (declining to allow state actors to circumvent voter initiative by claiming enforcement of federal law). We also emphasize that this case does not present the question of whether the scent of marijuana provides reasonable suspicion to suspect a criminal offense and perform an investigatory detention under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and we do not purport to decide that issue here. We do observe, however, that the AMMA does not authorize the use of marijuana in public, § 36-2802(0(2), and therefore its smoke emanating from a public area would still provide probable cause for arrest and reasonable suspicion for an investigatory detention.

.The AMMA anticipates that cardholders will carry their identification cards with them in order to enjoy a presumption of legal use, see § 36-2811(A)(1), that law enforcement officers will use a web-based verification system to confirm cardholders’ status once that card is presented, see §§ 36-2801(16), 36-2807(A), (B), and that dialogue between officers and members of the public will often involve the AMMA. See § 36-2816(E) (providing civil penalty for false statements about medical marijuana "to avoid arrest or prosecution”). As we previously indicated, however, this case does not present the question of whether the scent of marijuana provides reasonable suspicion to suspect a criminal offense and perform an investigatory stop.

. In our discussion in Section B, infra, we separately analyze the AMMA's specific provisions that preclude a finding of probable cause based on factors that fail to distinguish lawful from unlawful marijuana-related conduct.

. Although the record here was unclear whether police were aware of the dual use of the warehouse as a residence, its residential character does not affect our analysis of probable cause. We do not address whether the residential portion of the building was entitled to greater privacy protection under article II, § 8 of our state constitution. See State v. Bolt, 142 Ariz. 260, 263-65, 689 P.2d 519, 522-24 (1984).

. Although the dissent emphasizes that the issue of dispensaries was not raised on appeal, the law concerning dispensaries was in fact utilized to justify the trial court’s ruling below. And this court must address the issue of dispensaries in order to correctly resolve the arguments the state presents on appeal.

. The dissent observes that there was only one working dispensary in Tucson, suggesting that there may have been fewer AMMA-authorized storage facilities or growing operations in the area. The dissent also emphasizes that the warehouse here may not have had the external lighting and equipment required of an AMMA storage or growing facility. These are indeed factors a magistrate could consider, coupled with the aroma of raw marijuana, in evaluating whether officers had probable cause to search a premises. But, such information was not presented in support of the warrant request here and therefore is not relevant to our consideration of the probable-cause question before us. See State v. Greenleaf, 11 Ariz.App. 273, 274, 464 P.2d 344, 345 (1970). That the dissent can so quickly conjure such factors underscores how readily officers can augment their probable-cause showing beyond mere observations about aroma, and thereby honor the privacy interests of those engaged in lawful behavior. While the search warrant affidavit indicated there were residences nearby the warehouse, this in no way suggests the warehouse was located outside a commercial or industrial district, as the dissent presumes, any more than it suggests the residences themselves were improperly located in an area zoned for nonresidential uses.

. The trial court's analysis also was internally inconsistent insofar as it maintained "the AMMA did not change existing case law regarding the smell of fresh marijuana or its use as probable cause,” yet the court implicitly conceded that, in light of the arrest clause, the odor of the substance alone is insufficient for an arrest. See Raymond, 21 Ariz.App. at 119, 516 P.2d at 61 (probable cause for arrest and search generally equivalent); see also State v. Hoskins, 199 Ariz. 127, ¶ 30, 14 P.3d 997, 1007-08 (2000) ("A police officer has probable cause when reasonably trustworthy information and circumstance would lead a person of reasonable caution to believe that a suspect has committed an offense.”).

. Section 36-2811 provides;
E. A registered nonprofit medical marijuana dispensary is not subject to prosecution; search or inspection, except by the department pursuant to § 36-2806, subsection H; seizure or penalty in any manner and may not be denied any right or privilege, including civil penalty or disciplinary action by a court or business licensing board or entity, for acting pursuant to this chapter and department regulations to acquire, possess, cultivate, manufacture, deliver, transfer, transport, supply, sell or dispense marijuana or related supplies and educational materials to registered qualifying patients, to registered designated caregivers on behalf of registered qualifying patients or to other registered nonprofit medical marijuana dispensaries.
F. A registered nonprofit medical marijuana dispensary agent is not subject to arrest, prosecution, search, seizure or penalty in any manner and may not be denied any right or privilege, including civil penalty or disciplinary action by a court or occupational or professional licensing board or entity, for working or *243 volunteering for a registered nonprofit medical marijuana dispensary pursuant to this chapter and department regulations to acquire, possess, cultivate, manufacture, deliver, transfer, transport, supply, sell or dispense marijuana or related supplies and educational materials to registered qualifying patients, to registered designated caregivers on behalf of registered qualifying patients or to other registered nonprofit medical marijuana dispensaries.

. This did not change with the 2001 amendment of § 13 — 3406(A)(1), which added the proviso concerning valid prescriptions. 2001 Ariz. Sess. Laws, ch. 334, § 13. "A defendant 'who relies upon an exception to a criminal statute made by a proviso or distinct clause has the burden of establishing and showing that she comes within the exception.' ” State v. Bayardi, 230 Ariz. 195, ¶22, 281 P.3d 1063, 1068-69 (App.2012), quoting In re Maricopa Cnty. Juv. Action No. IT9065297, 181 Ariz. 69, 82, 887 P.2d 599, 612 (App. 1994); accord State v. Kelly, 210 Ariz. 460, ¶ 11, 112 P.3d 682, 685 (App.2005); see also Jung, 19 Ariz.App. at 262, 506 P.2d at 653 ("[T]he state is not required to [prove] negative statutory exceptions — such exception is a matter of defense where it is not an ingredient of the offense.”).

. Our holding in this case does not apply to the special context of border checkpoints, and we do not resolve whether the odor of marijuana provides reasonable suspicion for an investigatory stop. We also emphasize that police retain the discretion to engage in consensual encounters and that marijuana smoke in public continues to provide grounds for suspecting criminal activity, as public use of marijuana remains illegal even under the AMMA. See § 36-2802(0(2).