IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**RONALD JAMES SISCO II,**
*Appellant.*

---

No. CR-15-0265-PR
Filed July 11, 2016

---

Appeal from the Superior Court in Pima County
The Honorable Howard J. Fell, Judge Pro Tempore
No. CR20131500-001
**AFFIRMED IN PART**

Opinion of the Court of Appeals, Division Two
238 Ariz. 229, 359 P.3d 1 (App. 2015)
**VACATED AND REMANDED**

---

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Joseph T. Maziarz, Section Chief Counsel, Criminal Appeals Section, Jonathan Bass (argued), Assistant Attorney General, Tucson, Attorneys for State of Arizona

Steven R. Sonenberg, Pima County Public Defender, David J. Euchner (argued), Assistant Public Defender, Tucson, Attorneys for Ronald James Sisco II

Amy P. Knight (argued), Kuykendall & Associates, Tucson; and Kathleen E. Brody, Jana L. Sutton, Osborn Maledon, P.A., Phoenix, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

---

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER and JUSTICES BRUTINEL, TIMMER and BOLICK joined.

---

CHIEF JUSTICE BALES, opinion of the Court:

**¶1**          Here we consider whether the odor of marijuana suffices to establish probable cause for issuance of a search warrant, given the adoption of the Arizona Medical Marijuana Act ("AMMA"), A.R.S. §§ 36-2801 through 2819.  We hold that it does, unless other facts would cause a reasonable person to believe the marijuana use or possession is authorized by AMMA, thereby dispelling the probable cause that otherwise would exist.

## I.

**¶2**          In March 2013, Tucson police officers responded to a tip that "a strong odor of fresh marijuana" was emanating from a storage warehouse at 18 West 35th Street.  This address is for Unit 18 in a complex of four similar buildings.  When the officers approached the complex in their patrol car, they could smell an "overpowering odor of fresh marijuana."  After they walked on the sidewalk around the complex's perimeter, the officers believed the odor was emanating from Unit 18.

**¶3**          Based on the odor of marijuana, the officers sought a telephonic warrant to search Unit 18.  The magistrate issued the warrant, but when the officers searched this unit, they found it vacant.  The police then applied for an amended warrant to search Unit 20, which was separated from Unit 18 by a wall and locked gate.  The officers avowed that after entering Unit 18 they could better identify the source of the odor.  The magistrate issued an amended warrant.  When the officers entered Unit 20, they found it was being used as a residence and a marijuana growing operation.   In the ensuing search, officers seized marijuana growing equipment, marijuana paraphernalia, and hundreds of marijuana plants.

**¶4**          As a result of the search, Ronald James Sisco II was identified as an occupant of Unit 20.  He was charged with child abuse, possession of drug paraphernalia, possession of marijuana for sale, and production of marijuana.  Sisco moved to suppress evidence found in the search, arguing among other things that the odor of marijuana no longer suffices to establish probable cause in light of AMMA.  After an evidentiary hearing the trial court denied the motion, finding that AMMA does not impact the probable cause determination.  Sisco was convicted of all charges and the court imposed concurrent prison terms, the longest of which was three and one-half years.

**¶5** The court of appeals, in a split decision, reversed the trial court's ruling on Sisco's suppression motion and vacated his convictions and sentences. *State v. Sisco*, 238 Ariz. 229, 246 ¶ 57, 359 P.3d 1, 18 (App. 2015). The majority held that after AMMA, the scent of marijuana, in itself, is insufficient evidence of criminal activity to supply probable cause, and there were no "additional, commonly evident facts or contextual information suggesting a marijuana-related offense." *Id.* at 232 ¶ 2, 359 P.3d at 4. The dissent argued that the odor of marijuana still suffices to establish probable cause after AMMA and, even if it does not, the facts suggested the possession here was not in compliance with AMMA and thus supported the warrant. *Id.* at 249 ¶ 68, 359 P.3d at 21 (Espinosa, J., dissenting).

**¶6** We granted review because whether AMMA affects the determination of probable cause based on the odor of marijuana is a recurring issue of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

**¶7** Prohibiting "unreasonable searches and seizures," the Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause." *See also* Ariz. Const. art. 2, § 8; A.R.S. § 13-3913. Whether a magistrate's probable cause determination comports with the Fourth Amendment is a mixed question of law and fact that we review de novo. *State v. Moore*, 222 Ariz. 1, 7 ¶ 17, 213 P.3d 150, 156 (2009).

**¶8** Probable cause exists when the facts known to a police officer "would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (internal quotation marks and citations omitted). The facts need not show it is more likely than not that contraband or evidence of a crime will be found. "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). Instead, all that is "required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* (quoting *Gates*, 462 U.S. at 238). This "practical and common-sense" standard depends on the totality of the circumstances. *Id.*

3

**A.**

**¶9**	An officer can rely on his or her senses, including the sense of smell, to establish probable cause if doing so would lead a reasonable person to believe that contraband or evidence of a crime is present. *E.g.*, *State v. Decker*, 119 Ariz. 195, 197, 580 P.2d 333, 335 (1978). Accordingly, Arizona decisions predating AMMA held that an officer detecting the odor of marijuana was itself sufficient to establish probable cause, as the possession or use of marijuana was per se illegal. *See id.* (holding that odor of burning marijuana emanating from hotel room afforded probable cause to believe crime had been or was being committed); *see also State v. Harrison*, 111 Ariz. 508, 509, 533 P.2d 1143, 1144 (1975) (holding that odor of marijuana afforded probable cause to believe automobile contained contraband); *State v. Mahoney*, 106 Ariz. 297, 301–02, 475 P.2d 479, 483–84 (1970) (holding that probable cause was established by odor of marijuana emanating from suitcase).

**¶10**	The parties have used the phrase "plain smell doctrine" to refer to the proposition that marijuana's odor can alone provide probable cause. This terminology, however, is imprecise, partly reflecting that court opinions have used the phrase "plain smell" in different contexts. The phrase has sometimes been used to describe circumstances when no "search" has occurred because detecting an odor does not invade an expectation of privacy. *See, e.g.*, *State v. Morrow*, 128 Ariz. 309, 312, 625 P.2d 898, 901 (1981) (holding that dog's sniffing a bag at an airport is not a search and stating that "plain smell" doctrine is akin to "plain view" doctrine). Whether detecting an odor constitutes a search is, of course, a different issue than whether an odor affords probable cause.

**¶11**	Equating the "plain smell" or "plain view" doctrines with relying on one's senses to establish probable cause is also potentially confusing because the United States Supreme Court has used the plain view doctrine to identify circumstances when a police officer may lawfully seize items without a warrant. *See Horton v. California*, 496 U.S. 128, 133–34 (1990). The doctrine allows police to seize an object "if they are lawfully in a position to view it, if its incriminating character is immediately apparent, and if they have a lawful right of access to it." *Minnesota v. Dickerson*, 508 U.S. 366, 374–75 (1993); *see also Horton*, 496 U.S. at 133–34; *Arizona v. Hicks*, 480 U.S. 321, 326–27 (1987); *Mazen v. Seidel*, 189 Ariz. 195, 197, 940 P.2d 923, 925 (1997).

**¶12**       By requiring that an object's "incriminating character" be "immediately apparent" for purposes of the plain view doctrine, the United States Supreme Court has not adopted a standard more stringent than probable cause. Although the phrase "immediately apparent" might suggest "near certainty," *Texas v. Brown*, 460 U.S. 730, 741 (1983), the Court has rejected such "an unduly high degree of certainty as to the incriminatory character of evidence" for application of the plain view doctrine, *id.*, clarifying that police need only have probable cause to associate the object with criminal activity. *See Horton*, 496 U.S. at 142 (noting that police had probable cause to believe objects seized were incriminating evidence); *Hicks*, 480 U.S. at 326–27 (recognizing plain view doctrine can apply when officer has probable cause to believe object is contraband); *Brown*, 460 U.S. at 741–42; *see also State v. Apelt*, 176 Ariz. 349, 363, 861 P.2d 634, 648 (1993) (noting that plain view doctrine justified seizure if apparent evidentiary value of items established probable cause).

**¶13**       This case does not concern whether a search occurred when police detected the odor of marijuana or whether the plain view (or "plain smell") doctrine authorized a warrantless seizure. Instead, we must decide whether, in light of AMMA, the officers' detection of an "overpowering odor" of marijuana afforded probable cause; that is, whether a reasonable person would conclude there was a "fair probability" the storage unit contained contraband or evidence of a crime.

**B.**

**¶14**       AMMA has made the use of marijuana lawful for medicinal purposes under the terms and conditions set forth in that Act. *Reed-Kaliher v. Hoggatt*, 237 Ariz. 119, 122–23 ¶¶ 7, 17, 347 P.3d 136, 139–40 (2015); *State ex rel. Montgomery v. Harris*, 234 Ariz. 343, 345 ¶ 16, 322 P.3d 160, 162 (2014). Thus, although marijuana possession or use remains illegal under federal law, the odor of marijuana no longer necessarily reflects criminal activity under Arizona law.

**¶15**       Probable cause, however, does not turn on the "innocence" or "guilt" of particular conduct, but instead on the "degree of suspicion that attaches to particular types of non-criminal acts." *Gates*, 462 U.S. at 243 n.13. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. . . . [T]herefore,

innocent behavior frequently will provide the basis for a showing of probable cause." *Id.*

**¶16** Notwithstanding AMMA, the odor of marijuana in most circumstances will warrant a reasonable person believing there is a fair probability that contraband or evidence of a crime is present. This conclusion reflects that AMMA did not decriminalize the possession or use of marijuana generally. A.R.S. § 13-3405(A) (criminalizing marijuana possession and use in Arizona); A.R.S. § 36-2802(E) (limiting immunity from civil, criminal, or other penalties for using marijuana to instances where "authorized under [AMMA]"). If AMMA had done so, or if Arizona eventually decriminalizes marijuana, our analysis and conclusion in this context might well be different. *Cf. Commonwealth v. Cruz*, 945 N.E.2d 899, 908–09 (Mass. 2011) (no reasonable suspicion, let alone probable cause, of criminal activity based on "faint odor" of marijuana because possession of up to one ounce of marijuana is not criminal but rather a civil offense); *State v. Crocker*, 97 P.3d 93, 96–98 (Alaska Ct. App. 2004) (no probable cause to believe "strong odor" of marijuana coming from inside residence, without more, indicated unlawful activity where state constitution authorizes all citizens to grow marijuana for personal use, up to four ounces).

**¶17** Instead, AMMA makes marijuana legal in only limited circumstances. Possession of any amount of marijuana by persons other than a registered qualifying patient, designated caregiver, or medical marijuana dispensary agent is still unlawful, and even those subject to AMMA must strictly comply with its provisions to trigger its protections and immunities. *See* A.R.S. §§ 13-3405(A)(1), 36-2802(E). Thus, when an officer detects marijuana by sight or smell, the "degree of suspicion that attaches" remains high, notwithstanding AMMA. *See Gates*, 462 U.S. at 243 n.13. A reasonable officer is therefore justified in concluding that such sight or smell is indicative of criminal activity, and thus probable cause exists. *See id.*

**¶18** This does not mean, however, that AMMA has no effect on an officer's probable cause determination. Because probable cause is determined by the totality of the circumstances, *Gates*, 462 U.S. at 238, and marijuana possession or use is lawful when pursuant to AMMA, *Reed-Kaliher*, 237 Ariz. at 122–23 ¶¶ 7, 17, 347 P.3d 136, 139–40, a reasonable officer cannot ignore indicia of AMMA-compliant marijuana possession or use that could dispel probable cause. *See, e.g., State v. Buccini*, 167 Ariz. 550,

556–58, 810 P.2d 178, 184–86 (1991) (holding probable cause absent when officer ignores information material to distinction between criminal and non-criminal activity). Moreover, we have consistently held that police must include exculpatory facts that are known to them and material to the probable cause determination in any affidavit in support of a search warrant. *Id.* at 554–55, 557–58, 810 P.2d at 182–83, 185–86 (noting that "omissions are material where there is a substantial possibility that the omitted facts would have altered a reasonable magistrate's probable cause determination") (internal quotation marks and citations omitted)); *see also State v. Carter*, 145 Ariz. 101, 109–10, 700 P.2d 488, 496–97 (1985). We reaffirm those principles here, giving effect to the interplay between Arizona's general proscription of marijuana and AMMA.

¶19　　For instance, AMMA requires qualifying patients to register with the Arizona Department of Health Services ("DHS") and apply for a registry identification card in order to lawfully possess and use medical marijuana. A.R.S. § 36-2811(B) (limiting immunity from arrest, prosecution, or penalty for marijuana offenses to the *medical use* of marijuana for a "*registered* qualifying patient[]" (emphasis added)); A.R.S. § 36-2801(9) (defining "medical use" of marijuana as "possession . . . [or] use" of marijuana for treatment of a "*registered* qualifying patient's debilitating medical condition") (emphasis added). If the qualifying patient satisfies all statutory and regulatory requirements to possess and use medical marijuana, DHS issues the patient a registry identification card. A.R.S. §§ 36-2804.05(A),-2804.04(A), -2804.03(A).

¶20　　Presentation of a valid AMMA registry identification card, therefore, could indicate that marijuana is being lawfully possessed or used. Such information could effectively dispel the probable cause resulting from the officer's detection of marijuana by sight or smell, unless of course other facts suggest the use or possession is not pursuant to AMMA. *See* A.R.S. § 36-2811(H) (providing that possession of registration card does not provide probable cause but also does not preclude existence of probable cause on other grounds). The ultimate inquiry, as in other probable cause determinations, turns on a "practical, common-sense" consideration of the totality of the circumstances. *Harris*, 133 S. Ct. at 1055.

¶21　　Sisco argues that AMMA has elevated the standard of probable cause with respect to marijuana, either in general or at least with respect to registered qualifying patients. Under that view, no person in

7

Arizona would be subject to search or seizure by state or local police officers based only on an officer seeing or smelling marijuana. Instead, officers would need something more to conclude criminal activity is occurring or has occurred – what might be termed an "odor (or sight) plus" standard.

¶22 We disagree. AMMA does not broadly alter the legal status of marijuana in Arizona but instead specifies particular rights, immunities, and obligations for qualifying patients and others, such as designated caregivers. *See* A.R.S. §§ 36-2801(13) (defining "qualifying patient" as those diagnosed by a physician as having a debilitating medical condition); 36-2811(B) (limiting AMMA's protections only to those qualifying patients registered with DHS and complying with AMMA's limitations); 36-2802(E) (reiterating marijuana possession and use remains unlawful in Arizona "except as authorized under [AMMA]").

¶23 Nor does AMMA's broad immunity provision, § 36-2811(B), or its subsection relating to probable cause, § 36-2811(H), suggest that AMMA patients have greater protections from searches or increased expectations of privacy than those enjoyed by the general public. Subsection (B) affords immunities for specified conduct under AMMA; subsection (H) provides that possession of a registry card does not itself constitute probable cause, but also does not preclude the existence of probable cause on other grounds. AMMA expressly does not prevent the imposition of criminal or other penalties for using marijuana except as permitted by the statute. § 36-2802(E). Taken together, these provisions suggest that registered qualifying patients, and others covered by the Act, are not generally afforded greater protections from searches than is the general public, but instead enjoy such protections as AMMA specifically provides. *E.g.*, §§ 36-2811(E), (F) (affording certain protections against searches of registered nonprofit medical marijuana dispensaries and their agents).

¶24 Sisco also argues that allowing searches based merely on the odor of marijuana would deny registered patients their right to privacy protected by the Fourth Amendment and Article 2, Section 8 of the Arizona Constitution. Denying this right, Sisco contends, would in turn violate AMMA's provision stating that a registered qualifying patient is not "subject to . . . denial of any right or privilege" for the patient's medical use of marijuana. § 36-2811(B). But the right to privacy protected by the Fourth Amendment and Article 2, Section 8 is not a guarantee against *all*

government searches and seizures, only *unreasonable* ones. U.S. Const. amend. IV; *United States v. Sharpe*, 470 U.S. 675, 682 (1985); *State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986). A search properly executed pursuant to a valid warrant supported by probable cause generally comports with that guarantee. *See Gates*, 462 U.S. at 262–63 (White, J., concurring); *see also Ault*, 150 Ariz. at 463, 724 P.2d at 549.

**¶25** Given Arizona's general prohibition against marijuana possession and use, it is reasonable for officers to conclude that criminal activity is occurring when they see or smell marijuana, thereby satisfying probable cause. In this respect, registered qualifying patients are not denied Fourth Amendment rights or privileges based on their medical marijuana use; they are simply treated like the broader public. Moreover, as we have explained, probable cause can be dispelled by indicia of AMMA-compliant marijuana possession and use. Under the standard we adopt, registered qualifying patients are not denied Fourth Amendment rights or privileges, nor are they "subject to arrest, prosecution or penalty in any manner," for their medical use of marijuana. § 36-2811(B)(1).

**¶26** We reject the "odor (or sight) plus" standard adopted by the court of appeals and urged by Sisco. Instead, the general proscription of marijuana in Arizona and AMMA's limited exceptions thereto support finding probable cause based on the smell or sight of marijuana alone unless, under the totality of the circumstances, other facts would suggest to a reasonable person that the marijuana use or possession complies with AMMA. This "odor (or sight) unless" standard comports with the Fourth Amendment standard prescribed in *Gates* and gives effect to AMMA's exceptions by precluding officers or magistrates from ignoring indicia of AMMA-compliant marijuana use or possession when assessing probable cause.

### C.

**¶27** Applying the "odor unless" standard, we hold that probable cause existed to support issuance of the search warrant in this case. The odor of marijuana suggested illegality, even if after AMMA it did not conclusively establish a crime was occurring. Nothing in the record suggests that the police, in seeking a warrant, disregarded any indicia that marijuana was being used or possessed in compliance with AMMA. Sisco

is not a registered qualifying patient, nor is he otherwise authorized by AMMA to cultivate or possess marijuana.

¶28 Here the police detected an "overpowering odor" of marijuana emanating from a cinderblock warehouse complex. The mere fact that AMMA authorizes use, possession, or cultivation of marijuana in certain circumstances does not dispel the probable cause established by the odor. Under AMMA, registered qualifying patients are generally authorized to possess up to two and one-half ounces of useable marijuana, while those patients that live more than twenty-five miles from the nearest dispensary may be authorized to cultivate up to twelve marijuana plants. § 36-2801(1)(a); § 36-2804.02(A)(3)(f). A designated caregiver may also cultivate up to sixty plants, but only if the caregiver cares for five patients, all five patients are authorized to cultivate marijuana, and each patient designates the caregiver to cultivate on their behalf. §§ 36-2801(1)(b)(ii), (5); § 36-2804.02(A)(3)(f). AMMA also authorizes dispensary cultivation sites in certain locations. *See* A.R.S. § 36-2804(B)(1)(b)(ii). Nothing suggests the police here had reason to believe they had detected marijuana authorized by any of these provisions.

¶29 In sum, under the totality of the circumstances presented here, the odor of marijuana established probable cause. We have no occasion to assess how, in other circumstances, probable cause might be dispelled by such facts as a person's presentation of a valid registration card.

### III.

¶30 We affirm the trial court's ruling denying the motion to suppress, vacate the court of appeals' opinion, and remand to the court of appeals so it may consider Sisco's argument that the evidence was insufficient to support his conviction for child abuse and any other issues he properly preserved in his appeal from his convictions and sentences.