**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,        :
                               :         ID No. 1807016722

v.                       :         In and For Kent County
                               :

CHRISTOPHER JERNIGAN,    :
                               :

Defendant.           :

## OPINION

Submitted: May 14, 2019
Decided:  June 13, 2019

Lindsay A. Taylor, Esquire, DEPARTMENT OF JUSTICE, Dover, Delaware, *for the State*.

Adam D. Windett, Esquire, HOPKINS & WINDETT, LLC, Dover, Delaware, *for the Defendant*.

Clark, J.

Defendant Christopher Jernigan[1] moves to suppress evidence seized during a warrantless vehicle search. His motion raises two issues of first impression in Delaware. The first issue involves the application of the automobile exception to the warrant requirement when the police base a search upon the odor of raw marijuana emanating from a vehicle. He argues that because he holds a medical marijuana card, the police did not have probable cause to arrest him or search his vehicle simply because an officer could smell raw marijuana in his car.

Mr. Jernigan correctly recognizes that a registered qualifying patient who possesses marijuana and otherwise complies with Delaware's Medical Marijuana Act[2] (hereinafter "DMMA" or the "Act") is not engaged in illegal activity. Nor is less than six ounces of marijuana considered contraband when possessed consistently with the requirements of that Act.[3] As a result, the Court, under certain circumstances, must consider the fact that a person possessed a valid medical marijuana card in its probable cause analysis.

Second, the motion raises the issue of whether the Court should consider facts readily available to an officer, though not known to the officer, when performing its probable cause analysis. In this case, the searching officer did not know Mr. Jernigan had a registry identification card. Mr. Jernigan's status, however, was readily available in the Delaware Criminal Justice System ("DELJIS"). The officers on scene did not view the screen in DELJIS containing this status, but under the circumstances of this case, they should have. For that reason, the Court must consider Mr. Jernigan's DMMA status in the totality of the circumstances. When

---

[1] At the hearing, Mr. Jernigan identified himself as Christopher Brewer, The Court will refer to him in this opinion as he is identified in the caption.

[2] 16 *Del. C.* §§ 4901A-4928A.

[3] *See* 16 *Del. C.* § 4903A(a) (defining possession of less than six ounces to be in compliance with DMMA).

doing so, the police did not have probable cause to search Mr. Jernigan's vehicle. His motion to suppress must therefore be **GRANTED**.

## FACTUAL FINDINGS FROM THE SUPPRESION HEARING

The following facts are those found by the Court after the suppression hearing held on May 14, 2019. The State presented one witness, Patrolman Spicer from the Dover Police Department. The Court finds him to be a credible witness and accepts his testimony for purposes of its findings. The Court also bases its findings, in part, upon the testimony of the Defense witnesses.

On July 24, 2018, Mr. Jernigan and Ms. Deanem Moore drove a car to Cherry Street, in Dover. Ms. Moore initially drove the car and stopped it in the middle of the street in a high crime area. At that point, she and Mr. Jernigan exited the car to speak with bystanders.

Patrolman Spicer and Patrolman First Class Wood, also from the Dover Police Department, noticed the illegally stopped vehicle and decided to investigate it. As they approached, Mr. Jernigan reentered the driver's side door of the car and placed it in reverse to remove it from the middle of the road. While doing so, the car window remained down. At that point, the officers activated their patrol vehicle's emergency equipment. Patrolman Spicer then exited his vehicle. As the officer approached the other car, Mr. Jernigan began raising his front driver's side window until the officer instructed him to lower it.

Patrolman Spicer first smelled an odor of raw marijuana while he was four to six feet from the car. When he stood next to Mr. Jernigan, with the window again rolled down, the odor of raw marijuana intensified. Patrolman Spicer could not identify the quantity of marijuana in the car by smell. Nevertheless, at that point, the officers immediately handcuffed Mr. Jernigan and began searching his vehicle.

Pursuant to his search, Patrolman Spicer found a firearm in the vehicle. The search also netted .1 grams of marijuana, ammunition, and a digital scale.

Mr. Jernigan held a valid DMMA card and was a registered qualifying patient as defined by the Act. He did not disclose that fact to the officers, however, at any time prior to his arrest or the search of his vehicle. The arresting officers had the capacity to verify his status as a DMMA registry cardholder through DELJIS before they conducted the search. Nevertheless, Patrolman Spicer did not learn Mr. Jernigan's status prior to the search. He testified that Private First Class Wood conducted the DELJIS inquiries, but could not be certain when PFC Wood conducted those inquiries. At some point, some officer on site conducted the inquiries and learned that Mr. Jernigan had a revoked license. The officers did not, however, verify in DELJIS whether Mr. Jernigan held a DMMA card. Multiple officers secured the site and detained Mr. Jernigan in the rear of the patrol vehicle before the officers began the search. A motor vehicle recording ("MVR") demonstrates that there was no sense of urgency or exigent circumstances present on the scene prior to the search.

## ARGUMENTS OF THE PARTIES

Mr. Jernigan does not dispute the lawfulness of the initial traffic stop because he drove a vehicle that the police observed illegally stopped in the middle of a public roadway. He argues, however, that the police did not have probable cause to arrest him and search his vehicle. His arguments are appropriately summarized in two parts.

First, and primarily, he argues that DMMA completely decriminalizes marijuana possession when one possesses it in a manner that complies with the Act. Accordingly, he emphasizes that such possession in no way amounts to a crime or a

civil violation. He also argues that the marijuana was not contraband because he legally possessed it.[4]

Second, he argues that the officer's detection of *raw* marijuana gave him no basis to suspect that the car housed more than six ounces of marijuana or that Mr. Jernigan consumed it. According to Mr. Jernigan, the officers should have taken reasonable efforts to verify Mr. Jernigan's DMMA status. In so arguing, Mr. Jernigan emphasizes that verification was only a walk to the patrol car and a DELJIS check away.

The State counters broadly by arguing that DMMA is irrelevant in search and seizure analysis. According to the State, notwithstanding the Act, police have automatic authority to search motor vehicles if they detect the smell of burnt or raw marijuana. In this regard, the State asserts that DMMA merely provides an affirmative defense to criminal and civil liability. In support of its argument, the State cites recent Delaware Supreme Court authority confirming, as a general rule, that when an officer smells marijuana from within a vehicle, the officer may lawfully search the vehicle.

Second, the State argues that the totality of the circumstances in this case included the following: Mr. Jernigan's motor vehicle violation; the high crime area at issue; Mr. Jernigan's suspicious behavior in rolling up his window as an officer approached; and, the smell of raw marijuana. These facts combined, the State argues, demonstrate the probable cause necessary to justify the vehicle search. The State argues that relevant circumstances *do not* include Mr. Jernigan's DMMA status.

---

[4] At the hearing, the Court queried whether marijuana remains contraband pursuant to federal law, and if on that basis, state law enforcement officers have grounds to search a car on that basis. The parties took no position on that matter, but instead focused all arguments on State law. As a result, the Court declines to include any such analysis in this decision.

## STANDARD OF REVIEW

In a suppression hearing, the Court sits as the finder of fact, assesses witness credibility, and weighs the evidence.[5] Since the motion challenges a warrantless search, the burden is on the State to establish that there was probable cause to justify a warrantless search of a vehicle.[6]

The State relies upon the automobile exception to the warrant requirement to support the search. Pursuant to that exception, the police must have probable cause to believe that an automobile is carrying contraband or evidence of a crime before they may lawfully search the vehicle without a warrant.[7] Probable cause is subject to a totality of the circumstances analysis.[8] To establish probable cause, the police are required to assess whether there are "facts which suggest, when *those facts* are viewed under the totality the circumstances, that there is a fair probability that the defendant has committed a crime."[9]

## DMMA's COMPLETE LEGALIZATION OF MARIJUANA POSSESSED BY REGISTERED QUALIFYING PATIENTS MUST BE CONSIDERED IF A DEFENDANT'S STATUS IS KNOWN TO THE OFFICER.

Delaware has recently decriminalized possession of small quantities of marijuana.[10] Possession of less than one ounce of marijuana is now a civil violation if the accused is over twenty-one years of age.[11] Within that statute, the General Assembly clarified that it did not intend to modify traditional search and seizure

---

[5] *State v. Dewitt*, 2017 WL 2209888, at *1 (Del. Super. May 18, 2017).
[6] *Id.*
[7] *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985).
[8] *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993).
[9] *Id*. at 930 (emphasis in the original).
[10] *See* 16 *Del. C.* § 4764 (decriminalizing the possession of certain small quantities of marijuana by persons who are not prohibited).
[11] 16 *Del. C.* § 4764(c).

analysis with regard to personal use amounts, notwithstanding the new reality that possession and use of such an amount generates only civil liability. [12]

DMMA's structure, however, is markedly different from the law decriminalizing personal use quantities of marijuana. The parties expended considerable effort arguing whether DMMA completely legalizes possession and use for a select group of persons. They dispute whether by completely legalizing marijuana for that group, DMMA thereby eliminates all criminal and civil stigma associated with lawfully possessed amounts of marijuana.

The State incorrectly argues that while DMMA defines compliant marijuana possession as lawful, it does so only by creating an affirmative defense. To the contrary, DMMA provides in relevant part that:

> [a] *registered qualifying patient* shall not be subject *to arrest, prosecution, or denial of any right or privilege, including but not limited to civil penalty* . . . for the medical use of marijuana pursuant to this chapter, if the registered qualifying patient does not possess more than 6 ounces of usable marijuana.[13]

At the outset, 16 *Del. C*. § 4903A(a) completely prohibits arrest, prosecution, or assessment of civil liability for DMMA compliant use. There is no reasonable reading of DMMA that (1) acknowledges the absence of illegal conduct by registered qualifying patients on one hand, while (2) inconsistently permitting searches based upon what is lawful conduct. The General Assembly's choice to include language protecting "any right or privilege. . ." for such a patient further evidences its intent that a registered qualifying patient is not subject to search solely because he or she possessed less than six ounces of marijuana. In this regard,

---

[12] *See* 16 *Del. C.* § 4764(h) (providing that "[n]othing contained herein shall be construed to repeal or modify any law or procedure regarding search and seizure").

[13] 16 *Del. C*. 4903A(a) (emphasis added).

DMMA compliant possession is simply no longer a criminal or a civil offense under Delaware law.

The Court has considered the State's position that 16 *Del. C.* § 4913A entitled "Affirmative Defense and Dismissal for Medical Marijuana" demonstrates the General Assembly's intention that DMMA compliant possession provides merely an affirmative defense. Contrary to the State's argument, a plain reading of that section demonstrates that it applies to individuals who are *not* registered qualifying patients. Namely, Section 4913A(a) provides in relevant part that:

> *an individual* may assert a medical purpose for using marijuana as a defense to any prosecution of an offense involving marijuana intended for the patient's medical use, and this defense shall be presumed valid and the prosecution shall be dismissed where the evidence shows that:
>
> > (1) A physician states that, in the physician's professional opinion, after having completed a full assessment of the individual's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from marijuana to treat or alleviate the individual's serious or debilitating medical condition or symptoms associated with the individual's serious or debilitating medical condition; and
> >
> > (2) The individual was in possession of no more than 6 ounces of usable marijuana; and
> >
> > (3) The individual was engaged in the acquisition, possession, use, or transportation of marijuana, paraphernalia, or both, relating to the administration of marijuana to treat or alleviate the individual's serious or debilitating medical condition or symptoms associated with the individual's serious or debilitating medical condition.[14]

Subsection (c) of that same section provides, however, that:

> [a]n individual is not required to possess a registry identification card to raise the affirmative defense set forth in this section.[15]

---

[14] 16 *Del. C.* 4913A(a) (emphasis added).
[15] 16 *Del. C.* 4913A(c).

When reading Sections 4903A and 4913A of DMMA *in pari materia*,[16] where (1) Section 4903A defines activity by registered qualifying patients to be legal and not grounds for arrest or prosecution, and where (2) Section 4913A provides that *all persons* may assert an affirmative defense, such an affirmative defense applies to those persons who are *not* registered qualifying patients. When considering DMMA in its entirety, there is no other reasonable reading of these two sections.

In further support of its position, the State understandably relies upon two recent Delaware Supreme Court cases and one decision of this Court. The State argues that these cases establish a rigid rule that DMMA's provisions are irrelevant to the front-end-view appropriate in search and seizure analysis. Each of these cases are distinguishable.

First, the State cites *Law v. State*.[17] There, the Supreme Court reiterated the general rule that "the odor of an illegal drug is sufficient to constitute probable cause for the search of a car."[18] In *Law*, the Court found the search of a car to be lawful based upon speeding, the occupant's extreme nervousness, and the odor of marijuana.[19] Importantly, the *Law* decision does not articulate whether the odor of marijuana was raw or burnt. Furthermore, it does not examine the issue in the context of an individual holding a valid registry identification card.

Likewise, in *State v. Faulkner*,[20] this Court recognized that "[t]he odor of 'marijuana alone, if articulable and particularized, may establish . . . probable cause

---

[16] *See Richardson v. Board of Cosmetology and Barbering of State*, 69 A.3d 353, 357 (Del. 2013) (explaining that "[t]he doctrine of *in pari materia* is another well-settled rule of statutory construction. Under this rule, related statutes must be read together rather than in isolation…").
[17] *Law v. State*, 185 A.3d 692, 2018 WL 2024868, at *1 (Del. May 17, 2018) (TABLE).
[18] *Id.* at *2.
[19] *Id.* at *1.
[20] *State v. Faulkner*, 2017 WL 5905576, at *1 (Del. Super. Nov. 30, 2017).

for officers to believe that contraband is present in the area from which the scent emanates.'"[21] The *Faulkner* decision also did not address DMMA. Furthermore, it did not address the differences between the odor of burnt versus raw marijuana. Such a distinction is directly at issue in the current case. Namely, an officer smelling burnt marijuana, where State law makes it illegal to drive while consuming marijuana, generates probable cause pursuant to the general rule articulated in the *Law* decision.[22]

The smell of burnt marijuana in nearly all cases concerning vehicle stops raises particularized considerations regarding driving under the influence. Both the personal use decriminalization act and DMMA preserve such a distinction in driving under the influence investigations. Delaware law provides that one drives under the influence of a drug if his or her blood contains "any amount" of that drug within four hours of driving.[23] With regard to personal use decriminalization, 16 *Del. C.* § 4764(g) provides that "[n]othing contained herein shall be construed to repeal or modify existing laws . . . concerning the operation of motor vehicles or other actions taken while under the influence of marijuana."[24] Driving under the influence remains criminal activity notwithstanding personal use decriminalization. When there is probable cause to expect use at or near the time of driving, an arrest is lawful. Such lawful arrest triggers the automobile exception to the warrant requirement and

---

[21] *Id.* at *1 (citing *Fowler v. State*, 148 A.3d 1170, 2016 WL 5853434, at *1 n.5 (Del. Sep. 29, 2016) (TABLE)).

[22] *See Coley v. State*, 886 A.2d 1277, 2005 WL 2679329, at *2 (Del. Oct. 18, 2005) (TABLE) (finding probable cause for an arrest based on the smell of "burnt marijuana" emanating from the suspect's vehicle in conjunction with the passenger's nervous behavior, driving 20 miles below the speed limit, and abrupt lane changes); *and State v. DuBose*, 2016 WL 1590583, at *9 (Del. Super. Apr. 18, 2016), *aff'd*, 152 A.3d 582, 2016 WL 7212307, at *1 (Del. Dec. 12, 2016) (TABLE) (considering the odor of burnt marijuana emanating from a motor vehicle in conjunction with other factors to constitute probable cause for a warrantless search).

[23] 21 *Del. C.* § 4177(a)(6).

[24] 16 *Del. C.* § 4764(g).

thus permits a search. In other words, when an officer smells burnt marijuana he or she has discovered evidence demonstrating a fair probability that someone drove after consuming marijuana. Where there is smoke and driving, there is a fair probability of use and driving.

DMMA also maintains this distinction for purposes of driving under the influence. Namely, it provides in part that its protections do *not* prohibit criminally charging a registered qualifying patient when such person (1) smokes marijuana inside any form of transportation, or (2) has physical control of a motor vehicle while under the influence of marijuana.[25] Therefore, for a DMMA card holder, there is a meaningful distinction between when an officer smells burnt versus raw marijuana.

The strongest mandatory authority on this issue is the Delaware Supreme Court's recent order in *Valentine v. State*.[26] It is distinguishable, however, because it did not address the issue before this Court. For the first time, the Supreme Court in *Valentine* directly addressed the potential distinction between the smell of burnt versus raw marijuana in search and seizure analysis. There, the defendant argued broadly that the recent statutory changes (including DMMA) altered search and seizure analysis related to contraband.[27] The Supreme Court rejected that argument and held that "[m]arijuana [raw or burnt] was, and remains, contraband subject to forfeiture."[28] The *Valentine* decision stands for the principle that these two acts do not change well-established search and seizure law. Moreover, the decision also recognizes that DMMA does not abrogate search and seizure law relevant to marijuana possession across all classes of defendants. The *Valentine* decision, however, went no further.

---

[25] 16 *Del. C.* § 4904A(a)(3), (4).
[26] *Valentine v. State*, 2019 WL 1178765, at *1 (Del. Mar 12, 2019).
[27] *Id.* at *2.
[28] *Id.*

Mr. Jernigan's situation presents a different issue than the *Valentine* defendant's generic reference to the two acts. Here, Mr. Jernigan possessed a valid DMMA card at the time of the search. Rather than a case where a defendant claims a sweeping abrogation of search and seizure law, this Court must examine the situation where Mr. Jernigan was statutorily immune from arrest, prosecution, or denial of any right.[29] To give DMMA effect, when one possesses a valid registry identification card, and an officer knows that he or she does, that person's status must factor into the totality of the circumstances.

The State also cites a number of cases from other jurisdictions in support of its argument. Those cases primarily address partial decriminalization for personal use amounts.[30] The only case the State cites addressing medical marijuana does not support its position. Namely, the Supreme Court of Arizona in *State v. Sisco*[31] examined an issue close to the one at hand in light of Arizona's medical marijuana statute ("AMMA"). Arizona's statute is very similar to DMMA.

In *Sisco*, police sought a warrant to search an apartment where officers could smell a strong odor of fresh marijuana while standing outside.[32] The Supreme Court of Arizona noted that "the odor of marijuana in most circumstances will warrant a

---

[29] *See* 16 *Del. C.* 4903A(a) (stating that "[a] registered qualifying patient shall not be subject to arrest, prosecution, or denial of any right or privilege … for the medical use of marijuana pursuant to this chapter, if the registered qualifying patient does not possess more than 6 ounces of usable marijuana").

[30] *See State v. Barclay*, 398 A.2d 794 (Me. 1979) (holding that probable cause existed to search a car based on the odor of marijuana even when the amount of marijuana found constituted only a civil violation); *State v. Smalley*, 233 Or. App. 263 (2010) (holding that a police officer had probable cause to search a vehicle despite case law dictating that possession of less than one ounce of marijuana does not in itself create probable cause for a search); *State v. Ortega*, 749 N.W.2d 851 (Minn. 2008) (holding that an officer had probable cause to search a vehicle after defendant handed over an amount of marijuana that would only constitute a petty misdemeanor) *Robinson v. State*, 152 A.3d 661 (Md. 2017) (holding that police had probable cause to search a vehicle based on the odor of marijuana, despite small quantities being decriminalized).

[31] *State v. Sisco*, 239 Ariz. 532 (2016).

[32] *Id.* at 534.

12

reasonable person in believing that there is a fair probability that contraband or evidence of a crime is present."[33] Nevertheless, the Arizona court recognized that:

> [t]his does not mean, however, that AMMA has no effect on an officer's probable cause determination. Because probable cause is determined by the totality of the circumstances . . . and marijuana possession or use is lawful when pursuant to AMMA, . . . a reasonable officer cannot ignore indicia of AMMA-compliant marijuana possession or use that could dispel probable cause. . . [W]e have consistently held that police must include exculpatory facts that are known to them [in an affidavit in support of a warrant].[34]

The *Sisco* court further recognized that presentation of a valid registry card could dispel the probable cause resulting from an officer's detection of marijuana by sight or smell.[35] Unlike the case at hand, *Sisco* involved a residential search authorized by a warrant. The Supreme Court of Arizona found the warrant to be valid in a situation when by the time the police first confronted the occupants, the court had already approved the warrant and the police executed it.[36] In the context of a warrantless vehicle search, there is a heightened opportunity to discover a defendant's DMMA status prior to the search.

By its very nature, a totality of the circumstances review is intensely factual.[37] The State incorrectly argues that DMMA status is completely irrelevant when weighing the totality of the circumstances. When weighing the facts, a court must consider circumstances that both enhance and detract from a probable cause determination.[38] DMMA's provisions providing that possessing less than six ounces

---

[33] *Id*. at 536.
[34] *Id.* at 537.
[35] *Id.*
[36] *Id.* at 534.
[37] *State v. Gates*, 2018 WL 6016840, at *5 (Del. Super. Nov. 16, 2018).
[38] *See Gardenhire v. Schubert,* 205 F.3d 303, 318 (6th Cir. 2000) (explaining that in making a probable cause determination, "an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances,

of marijuana is no longer criminal, no longer contraband, and no longer generates civil liability, must be considered if the officer is aware of the defendant's status.

**THE SEARCHING OFFICERS WERE NOT AWARE THAT MR. JERNIGAN HELD A REGISTRY CARD PRIOR TO THE SEARCH; HOWEVER, MR. JENRIGAN'S DMMA STATUS WAS READILY AVAILABLE DURING THE TRAFFIC STOP.**

Having determined that a person's status as a registered qualifying patient may be a relevant factor under the totality of the circumstances, the Court must address to what extent, if any, a patrol officer is obligated to verify such status before conducting a vehicle search. A person's status relevant to DMMA is available through a search in DELJIS. The officers had the ability to view this entry in DELJIS in one of the patrol vehicles on site. The MVR demonstrates no urgent or extenuating circumstances that make it unreasonable for the officer to have run a DELJIS check prior to searching Mr. Jernigan's vehicle.[39]

Patrolman Spicer's testimony likewise confirmed no urgency on the scene. Rather, his testimony demonstrated his understanding and training that regardless of exculpatory circumstances, smelling marijuana in a vehicle, authorizes a search of that vehicle. Namely, Patrolman Spicer testified as follows:

---

recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest"). *See also Richie v. Coldwater Cmty. Schools*, 947 F.Supp.2d 791, 821 (W.D. MI. 2013) (explaining that an officer's probable cause determination must include "facts and circumstances establishing statutorily legitimated affirmative justification for the suspected criminal act" and that police "cannot ignore information that would alert a reasonable officer that the suspect's behavior is protected by a legally cognizable affirmative defense"); *and Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (holding that in a determination of probable cause "we analyze the weight of all the evidence – not merely the sufficiency of the incriminating evidence…").

[39] *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (recognizing that "probable cause is a function of information and exigency").

**Q:** So you were aware that you could run someone's name through DELJIS and find out if they were a medical marijuana patient, correct?
**A:** Correct

. . .

**Q:** Now, when you learned of his identity, you didn't then run his name through DELJIS, correct?
**A:** We did run his name through DELJIS to see if he had a valid Driver's License or any active capiases or warrants.
**Q:** Okay. And when you ran his name through DELJIS, was that before the search?
**A:** I believe PFC Wood is the one that conducted all of the DELJIS inquiries on [Mr. Jernigan]. I believe that would be after the search.
**Q:** Okay, so you don't think –
**A:** From the best of my recollection, I believe that would be after the search.

. . .

**Q:** Okay. And if you had known that he was a medical cardholder, that Mr. Brewer was a medical marijuana cardholder, would you have then not searched the vehicle?
**A:** No, his vehicle still would have been searched to insure that he has less than 6 ounces of marijuana, and it was packaged correctly, not for street-level dealing.

. . .

**Q:** Now, at the time that you initiated the search, did you have reason to believe that there was more than 6 ounces of marijuana in the car?
**A:** I detected an odor of marijuana. I did not know how much was in the vehicle.

Given this reality, Mr. Jernigan argues that the investigating officers should undertake a reasonable DELJIS query before conducting such a search. Accordingly, the issues distill down to what extent the Court should consider information that was readily available to the officer despite the officer being unaware of that information because of his inaction.

15

In deciding this issue, the Court initially considers recognized precedent regarding the facts relevant to determining probable cause. Namely, an officer's training and experience must be considered when weighing the facts available to the officer.[40] It is that recognition that in the first instance permits the general rule that when an officer recognizes the odor of marijuana coming from a vehicle, he or she may search the vehicle.[41] The Court must evaluate both reasonable suspicion and the elevated evidentiary standard for probable cause through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such officer's subjective interpretation of those facts.

Evaluating searches through this lens cuts both ways, however, depending upon the circumstances. In formulating probable cause:

> [w]here there is an opportunity for inquiry and investigation, inquiry and investigation should be made . . . An officer is not warranted in relying upon circumstances deemed by him suspicious, when the means are at hand of either verifying or dissipating those suspicions without risk, and he neglects to avail himself of those means.[42]

Where there is no risk and little inconvenience in conducting an inquiry before a warrantless search of a person's vehicle, a reasonable level of inquiry is appropriate.[43] The parties did not cite, and the Court did not locate Delaware

---

[40] *State v. Maxwell,* 624 A.2d 926, 931 (Del. 1993).

[41] *Fowler,* 2016 WL 5853434, at *1.

[42] *Filer v. Smith*, 55 N.W. 999, 1001-1002 (Mich. 1893).

[43] *See BeVier,* 806 F.2d. at 128 (holding that where information could easily have been obtained and was necessary to conclude if a crime had been committed, it was unreasonable for the officer not to make those inquiries. It remains up to investigating and arresting police officers to "extract that information" that may help clarify the circumstances of the arrest); *Baptiste v. J.C. Penny Co.,* 147 F.3d 1252, 1259 (10th Cir. 1998) (explaining that while conducting a totality of the circumstances determination, a police officer may weigh the credibility of witnesses, but "they may not ignore *available* and *undisputed* facts"). *See also Howell v. Moore*, 2018 WL 9478511, at *7 (E.D.VA. Aug. 24, 2017) (explaining that an officer may not disregard readily available exculpatory evidence. Here the defendant had notified the police that he had prescriptions for controlled substances and provided them the address and number of his 24-hour pharmacy where

16

authority directly addressing this issue. Nevertheless, objectiveness is the benchmark for search and seizure analysis. Reasonableness is as well. Under this case's circumstances, the officers' failure to avail themselves of a readily available fact that exculpated Mr. Jernigan was objectively unreasonable. An officer must make such a reasonable inquiry when the circumstances reasonably permit.[44]

In examining this tenet, LaFave's *Criminal Procedure* treatise best describes the two sides of the premise. Namely,

> [i]n the usual case, . . . a trained and experienced officer will have probable cause in circumstances, when the layman would not . . . because of his training and experience. But the experience-expertise rule cuts both ways; an experienced officer will be held *not* to have had probable cause if a man, with his special skills . . . should have recognized that no criminal conduct was involved.[45]

Here, the precipitating event for the exchange was a traffic violation. Part of the criminal activity alleged involved Mr. Jernigan driving without a valid license. A DELJIS check at some point was necessary. In fact, an officer performed one *while on scene* to check for capiases, warrants, and to check his drivers' license status. The officer need only have checked an additional screen prior to conducting a search where the basis for that search was the odor of raw marijuana. Furthermore, the MVR demonstrates anything but urgency in the situation before and during the search. Mr. Jernigan did not resist his arrest, and the officer placed him in the patrol car where he could have easily verified his DMMA status via a terminal in that same

---

they could verify his prescriptions. The court found that the police had violated the defendant's Fourth Amendment rights by not pursuing this "readily available exculpatory evidence").

[44] *See United States v. Evans*, 851 F.3d 830, 835 (8th Cir. 2017) (holding that officers "have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as 'law enforcement would not [be] unduly hampered … if the agents … wait[] to obtain more facts before seeking to arrest'" and "[a]n officer need not conduct a 'mini-trial' before making an arrest, but probable cause does not exist when a 'minimal further investigation' would have exonerated the suspect").

[45] 2 Wayne R. LaFave et. el., *Criminal Procedure* § 3.3(b) (4th ed. 2018) (emphasis added).

patrol car. Under these facts, the investigating officers did not take reasonable effort to apprise themselves of readily available information that would have demonstrated that Mr. Jernigan likely did not violate Delaware marijuana laws.

Because the police should have reasonably verified Mr. Jernigan's status, the totality of the circumstances in this case include: (1) a traffic violation; (2) suspicious, though legal behavior of rolling up a window; (3) an odor of raw marijuana, and (4) Mr. Jernigan's readily available DMMA status. With the later exculpatory fact considered in the totality of the circumstances, the evidence does not rise to the level of probable cause.

The Court is mindful of law enforcement's desire for blanket rules that provide ease in application. The Court fully recognizes that the officers in this case acted in good faith and performed a search in compliance with a general rule that they believed was applicable in all situations. DMMA, however, has partially changed the landscape relevant to marijuana possession. The police must consider those changes when evaluating the justification for a warrantless vehicle search. Search and seizure law does not lend itself to general rules or precise standards, but rather turns on the totality of the circumstances.[46] A warrantless vehicle search is a significant intrusion, and the totality of the circumstances must first justify that a defendant violated a law when assessed through the eyes of an experienced and trained officer. Here, under the facts of this case, an experienced and trained officer should have verified Mr. Jernigan's status before subjecting him to this search.

---

[46] *Maxwell*, 624 A.2d at 928.

**CONCLUSION**

The General Assembly chose to distinguish between lawful marijuana possession pursuant to DMMA and other uses that are unlawful (either criminally or civilly). Given this distinction, prior to the search, there was insufficient evidence in this case to demonstrate a fair probability that the marijuana Mr. Jernigan possessed was contraband under State law. For that reason, his motion to suppress must be **GRANTED**.